Benjamin Gassman, J.
In a one-count information filed by the District Attorney of New York County, each of the defendants is charged with a violation of section 2036 of the Penal Law. The information alleges that on or about the 14th day of February, 1963, the defendants unlawfully intruded upon a certain lot and piece of land, and a building thereon, at 50 West 96th Street, in the City and County of New York, without authority from the owner.
Upon the trial, the complainant, Robert Nieman testified that on the 14th day of February, 1963, he maintained a real estate management office at 50 West 96th Street, New York City, a 16-story apartment building owned by his wife; that such office, about 18 feet by 20 feet was located in the basement of said building and was accessible either through the service entrance or through stairs leading from the lobby. That on February 13, 3963, the defendant Stevens Clarke spoke to him about renting an apartment, No. 1-B in premises 78 Manhattan Avenue, New York, which was managed by the complainant, and that the said defendant made an application for the rental of said apartment.
*612 He testified further that on February 14, 1963, at about 3:45 p.m. the defendant Clarke came into his office and inquired whether that apartment was still vacant, and was told that it was. Defendant Clarke then asked the complainant to show him a form lease. Nieman showed him a form of lease, which Clarke perused for a period of three to five minués; that while Clarke was reading that lease, the defendants Joseph Lawson, Velma Hill and Vicki Morris entered the office together with another man, later identified as Mr. Quinones. The defendant Clarke then told the complainant that he decided not to take that apartment and that he transferred his rights to that apartment to the defendant Lawson. Nieman then told Clarke that he had no right to transfer any apartment. It should be noted at this point that the defendant Clarke is white and that the defendant Lawson is colored. The defendant Velma Hill then told the complainant that she represents “ CORE ” and she handed several leaflets to him, one of which is in evidence as People’s Exhibit 1. Nieman asked the said four defendants to leave the office, but they refused to do so. At that point, the man, identified as Quinones asked the complainant whether he refused to lease the apartment to defendant Lawson, and when Nieman replied that he did, Quinones served a subpoena upon him. Nieman told Quinones that he was surprised to see a city official taking part in such a demonstration. Nieman again requested the said four defendants to leave his office, but they refused to do .so and remained there. Quinones, however, left the office, saying to the said four defendants that they were on their own.
Nieman called the police and Patrolman Mclnerny arrived in about 10 minutes. In the meantime, the defendants Wesley Sutton and Kurt Flasher entered the office and exchanged greetings with the other four defendants. Nieman showed the subpoena to the police officer and told him that he wanted the defendants out of his office. The police officer told the defendants: “Now that the ease is in court, why don’t you go? You want others to obey the law, why don’t you? ” The defendants made no reply but remained in the office. Nieman told the defendants that it was after 5:00 p.m. and that he wanted to close the office, but the defendants refused to leave. At about 5:50 p.m. more police officers arrived and the defendants were arrested.
Kate Nieman, the wife of Robert Nieman testified that she was the owner of 50 West 96th Street, and that she did not give permission to any of the defendants to enter the said premises.
*613 Patrolman John Melnerny testified that, pursuant to a call, he arrived in complainant’s office at about 4:40 p.m. on that day. He found the six defendants in the office. Nieman showed him the subpoena and told him that he wanted the defendants to leave the office. The police officer told the defendants that they had no right to remain there and that they should leave. He repeated that request to the defendants four times. He remained in that office about 45 minutes and then, at Nieman’s request, arrested the defendants.
The defendants rested at the end of the People’s case without offering any testimony.
The defendants contend that section 2036 of the Penal Law does not apply to this case. They urge in their brief that “ nowhere in the reading of Section 2036, or the cases decided thereon, is there clear authority for the People’s contention that the unauthorized entry onto property itself and remaining thereon against the wishes of the owner, but without exercising domain or control, or use of the property, is a criminal trespass ”.
Such contention is without merit. We find, as a fact, that the defendants entered the complainant’s office in a group; that they insisted on remaining there and did remain there for about two hours against the complainant’s wishes. Such action was tantamount to intrusion upon complainant’s premises unlawfully.
While research failed to disclose any decision in this State exactly in point, we conclude, nevertheless, that in acting as they did, the defendants violated both the letter and the spirit of section 2036 of the Penal Law. That section, insofar as it applies to this case, provides that “ A person, who intrudes upon any lot or piece of land within the bounds of a city or village, without authority from the owner thereof * * * is guilty of a misdemeanor ”. The words “ lot or piece of land ” used in the statute, have been interpreted as including buildings on such lot or piece of land. (People v. Leiby, 184 Misc. 21.) The word “ intrude ” means to unlawfully enter upon land or buildings or premises of another, by a person without authority, and remaining there against the wishes of the owner thereof.
When the defendants entered the complainant’s office in a body and persisted in remaining there for over two hours against his wishes, disregarding his statement to them that he wished to close the office, they intruded upon his property. If their purpose in first entering that office was to force or induce the complainant to lease an apartment to defendant Lawson and, on failure thereof, to have a subpoena or other process served upon complainant, their purpose was concluded when the subpoena was served by Quinones. Their remaining in that office there *614 after and their refusal to leave the office, when requested to do so by complainant and by the police officer, constituted an unlawful intrusion.
Apparently conceding the facts as testified to by the People’s witnesses, the defendants nevertheless urge that they are not guilty of unlawful intrusion. They state in their brief that in enacting section 2036 of the Penal Law “ the legislature did not intend to enact a law to apply to a temporary unauthorised entry by a person onto the premises of another ”. They argue that — intrusion to be actionable — “must be an encroachment onto property of another accompanied by some degree of permanency of intrusion ”. We do not accept that argument. What was the complainant expected to do under the circumstances: Was it expected of him that he walk out of his own office and leave the defendants in occupancy thereof? Or should he have remained in his office — against his will — until such time as the defendants made up their minds to leave? At what point would the “temporary unauthorized entry ” become “an encroachment by some degree of permanency of intrusion ”? Is the law so impotent that it cannot redress a willful wrong? The answer to these questions is obvious. The complainant did what the law gave him a right to do, that is arrest the defendants and charge them with unlawful intrusion.
Whether the complainant was right or wrong in refusing to lease an apartment to defendant Lawson, is beside the point. Perhaps he may have refused to do so because Lawson was colored. We do not adjudicate that question here, for such adjudication is not necessary to a decision of this case. Apparently, the defendants felt that the complainant was guilty of discrimination, for they invoked the law by causing process to be served upon him. Having invoked the law against the complainant, they should have displayed the same respect for the law that they wanted the complainant to display. They had no right to take the law into their own hands and seek to overwhelm the complainant by sheer force of numbers. Their actions showed that they had a criminal intent when they entered the office in the first place. Under the circumstances, they unlawfully intruded upon complainant’s premises.
In People v. Stevens (109 N. Y. 159, 162) decided in 1888, the Court of Appeals traced the historical background of section 2036 of the Penal Law. That section was enacted in 1881 (L. 1881, ch. 676) and was a re-enactment of section 467 of the Penal Code (L. 1857, ch. 396, § 1) entitled “ An act to punish nuisances and malicious trespasses on lands ”. Section 467 of the Penal Code provided that “ Any person who shall hereafter *615 intrude or squat upon any lot”. In enacting section 2036 of the Penal Law, the Legislature omitted the word “ squat ”, but except for that omission, embodied the old section 467 into section 2036. The court in the Stevens case (supra, pp. 162-163) said: “The word ‘squat’ is omitted in the present statute, but it cannot be doubted that in both statutes the legislature had primarily in view lawless intrusions, especially on vacant lands in cities and villages, without the knowledge of the owner. Intrusion on any lands in cities and villages, vacant or not, is doubtless within the statute. The statute, construed in view of the pre-existing law, was primarily intended to define what was previously known in the criminal law as a criminal trespass, as distinguished from a mere civil trespass ”. (Emphasis supplied.)
The defendants would have this court substitute the word. “ exclusively ” for the words “ primarily ” and “ especially ”, used by the Court of Appeals in the Stevens case. We read the Stevens case as holding that a lawless intrusion, whether on vacant land or on any part of a building thereon, constitutes a violation under section 2036 of the Penal Law. In more recent times (1942), in a case involving a defendant charged with disorderly conduct for refusal to leave a private apartment after being ordered to leave by the occupant of that apartment, the court, in dismissing the disorderly conduct charge, at the same time said: “ It may well be that the defendant was a trespasser on the premises and could have been removed by force if necessary by the complainant or the police officers at her request or have been prosecuted under Section 2036 of the Penal Law for unlawful intrusion on real property ”. (People v. De Stefanis, 34 N. Y. S. 2d 52, 53; emphasis supplied.)
Accordingly, we find that the guilt of the defendants was established beyond a reasonable doubt. The motion of each defendant, made at the conclusion of the case, to dismiss the information, is denied as to each defendant, and each defendant is found guilty as charged.