Lyman H. Smith, J.
Defendant-appellant has been convicted of disorderly conduct in violation of subdivision 6 of section 240.20 of the Penal Law, after a trial on June 5, 1969, before the Hon. Lymah Pierce, Acting Police Justice of the Village of Dundee, Yates County, New York, sitting without a jury.
On May 11, 1969, at about 3:00 a.m. in the Village of Dundee a single loud blast of an automobile horn attracted the attention of the Village Police Chief who, at that moment, was in the process of following in his patrol car a blue Ford automobile on one of the main thoroughfares of the village, in an attempt to clock its speed. At the “ harsh” sound of the horn the officer broke off his chase of the Ford auto, executed a U-turn in the street and returned to a grocery parking lot where he had observed two parked vehicles and from which location he testified the sound of the horn had emanated.
The Police Chief, the People’s only witness, identified the two parked vehicles as a Chevrolet and a Dodge, and also identified their several occupants, including the defendant-appellant as an occupant in the driver’s seat of the Chevrolet. Upon direct examination and to the question, ‘ ‘ Are you sure from which vehicle the horn blast sounded? ”, the officer replied “ No, sir, I am not.”.
At the close of the People’s case the defendant took the stand and testified he had heard an auto horn, but denied that he had sounded his horn. Parenthetically, it-should be noted that the officer’s information charged only that “ one of the vehicles blew their horn which caused a person in an apartment to look out and also a person who was working in a restaurant to look out of his window. ’ ’
Although the exact source was not established, the sound of the auto horn obviously triggered all that followed.
After stopping his patrol car, the officer asked the defendant-appellant, his passenger and the two young men occupying the *279 Dodge automobile which one of them had sounded the horn. Each denied that any of them had done so. The officer then ordered all the young men to leave the parking lot and gave them "five minutes to get out ” or, in the alternative, stated that he would arrest them " for disorderly conduct and loitering ”.
Although the record is not clear as to the sequence of what happened next, it is clear a verbal exchange between these young men and the officer satisfied the officer that the appellant and the others had refused his command to disperse and that he should place all of them under arrest ‘1 for loitering ’ ’.
Near the close of the trial the transcript reveals the following colloquy between the court and the officer:
" Q. How long was it after you told them to disperse before you actually arrested them? A. I would say no more than two minutes on Steve — two or three minutes on Steve.
" Q. But you did tell them that you would give them five minutes? A. I told Jim Schoonover this and was turning to Hill’s car to tell Steve and Bob Coons.”
At an earlier point in the trial the officer (upon cross-examination) testified as follows: " Q. So you proceeded to arrest all four for one horn blowing incident. Correct? A. Yes, sir.” There is no evidence in the trial minutes that a crowd gathered.
To constitute the offense charged (disorderly conduct) there must be evidence beyond a reasonable doubt that this defendant committed acts violative of the statute. (Penal Law, § 240.20.)
Section 240.20 of the revised Penal Law provides in pertinent part as follows:
‘ ‘ A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: * * *
‘1 6. He 'congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse ”.
As indicated in the Practice Commentary (by Richard Denzer, Esq. and Peter McQuillan, Esq.) to this new section of the Penal Law (§ 240.20) the revision " partially” replaced the former " disorderly conduct” statute (old Penal Law, § 722). However, it is worthy of note that the authors of the Practice Commentary state, " Subdivision 6 [of § 240.20] substantially restates former Penal Law § 722(3).” McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, p. 129.)
While it might be argued that the appellant congregated with others and refused to comply with a lawful order to disperse (although the proof in this regard leaves much to be desired) the gravamen of the offense and the conduct which the statute proscribes must " at least be such that a breach of the peace *280 has become imminent or might reasonably be expected or intended to flow from such conduct.” (People v. Monnier, 280 N. Y. 77, 79.) There is no proof here that this defendant-appellant “ congregated ”, in the words of the statute, “ with intent ” to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof.
It is clear from the trial minutes that defendant was convicted either because the arresting officer was annoyed or alarmed by the sound of an auto horn, or because the defendant refused to comply with the officer’s order to disperse. Since the People failed to establish that this particular defendant sounded the auto horn the court is compelled to conclude that the charge herein arose after the defendant had been ordered to leave the scene and allegedly refused. In other words, it is inescapable that, if there was a breach of the peace it resulted from the defendant’s resistance to the efforts of the officer to place the defendant under arrest. It must follow therefore that it could have been the language or the acts of the officer himself which occasioned the breach of the public peace, if any.
It must be kept in mind that the prime purpose of the statute (Penal Law, § 240.20) is to preserve public order and peace. To sustain a conviction the offensive conduct must be public in nature and must cause inconvenience, annoyance or alarm to a substantial segment of the public, or be of such nature and character that it would appear beyond a reasonable doubt that the conduct created a risk that a breach of the peace was imminent (People v. Chesnick, 302 N. Y. 58; People v. Szepansky, 25 Misc 2d 239; People v. Balnis, 14 Misc 2d 928). Perhaps more important, it must be established beyond a reasonable doubt that the accused intended to breach the peace.
The statute must be read as a whole.
The complainant officer did testify that he saw two persons observing the scene from nearby windows. This hardly justifies a conclusion of “public inconvenience”. No witnesses testified as to any alleged “ annoyance or alarm ”.
At this point let it be emphasized that this court does not condone the acts of the defendant-appellant. If the allegations are true, the defendant and his companions may have violated other provisions of the Penal Law, although it seems significant that prior to trial the learned Police Justice dismissed companion charges of loitering (Penal Law, § 240.35) and resisting arrest (Penal Law, § 205.30). A law enforcement officer must necessarily carry on his work within the narrow (and ofttimes hazy) limits between the sanctions of the law and the constitutional rights granted to each citizen. Police officers’ duties *281 are difficult and they are entitled to the co-operation of every citizen.
However, in the instant case, the statute may not be molded to fit the facts. To warrant a conviction the facts must fit the statute under which the defendant has been charged.
This court is compelled to conclude, under the circumstances here, that neither the defendant’s refusal to disperse, if such there was, nor his resistance to arrest, indicates an intent to breach the public peace (cf. People v. Smith, 19 N Y 2d 212). Accordingly, on the facts and on the law, the judgment of conviction should be reversed, the information dismissed and the fine remitted.