Alois C. Mazur., J.
Although the decision has been rendered orally at the end of the trial herein, it is felt that a written decision is also desirable. This is so because the fact situation is quite typical of the times and, in all likelihood will recur. Furthermore, it has frequently been recommended that Judges state the basis and the rationale for their decisions so that the police, the law profession and other interested parties may be informed and/or guided. (See Canons of Judicial Ethics, canon 19; Trial Judges and the Police by Herman Goldstein, reprinted from Crime and Delinquency, 1968.)
The arresting officer herein alleged that during the course of a march of demonstrating students on Main Street, Buffalo, New York, the defendant uttered an obscene epithet and made an obscene gesture. The obscenity of the words and gesture has never been contested and is not particularly in issue. Suffice it to ,say that the words, judging by the number of sworn police complaints, are those which are frequently addressed to the police and which refer to a certain animal and its reputed incestuous proclivities. The gesture was of similar crudeness.
According to the sworn information, the words and gesture were apparently spoken and made only once. The sworn testimony, however, could be construed to indicate that the words were perhaps spoken twice and the gesture made once.
*573 There is no doubt, however, (at least from the testimony) that the march was anything but orderly and that the function of the police was merely to “ keep a watchful eye ” and to keep the demonstrators moving.
The defendant denies uttering the words and making the gesture. He maintained that during the course of the march he was searched for rocks or other missiles in an apparent police attempt to prevent the breaking of store windows. The defendant further testified that thereafter the police officer occasionally prodded on the defendant and his marching companions with a night stick. No allegation of any excessive force was made. The defendant, a college freshman, merely stated that he thereafter attempted to start a conversation with the officer with the hope of thereby diminishing what he considered to be signs of hostility. Toward this end and at one time the student said that he asked the officer whether he had seen the motion picture “Z”. The defendant testified that these attempts at conversation brought no response from the officer. However, according to the defendant, after several more of the alleged acts of gentle prodding, the defendant said that he made the following audible remark to his companions: “ I wonder how this will be reported by the press í ” “ Fascist men coming down Main Street ?! ? ”. Whereupon, according to the student version, the officer was alleged to have said, “ I’ll get you for this ” and shortly later, upon reaching a police vehicle the defendant was arrested.
The defendant was charged with violating subdivision 2 of section 240.25 of the Penal Law in that, with intent to harass or annoy the officer personally, the defendant did in a public place use abusive or obscene language and make an obscene gesture. At no time did the arresting officer charge or claim that the defendant’s acts caused any public inconvenience, annoyance or alarm or create a risk thereof (to wit: a violation of subdivision 3 of section 240.20 of the Penal Law).
For the sake of this decision only, this court shall assume that the police officer’s version was the actual one and that the words and gesture were spoken and made. This court shall also assume, upon the available evidence, that some dissatisfaction, justified or unjustified, was had by the defendant in regard to the activities of the police on the day in question.
Section 240.25 of the Penal Law, entitled Harassment, apparently was derived, in part and in purpose, from section 720 of the old Penal Law. Although admittedly the language is somewhat different, section 720 also dealt with acts or language *574 which annoyed or interfered with some other person (as opposed to a public annoyance or interference).
It would seem that any attempt to distinguish the two sections upon the ground that the present section only requires an “ intent to harass, annoy or alarm” and not an actual harassment or annoyance, would indeed result in nothing more than mental gymnastics or useless circuity. From a very practical point of view, it is virtually impossible to prove actual “intent” except by inferences from attending circumstances. And an inference of appropriate criminal intent could permissibly be made only after reference to the question of whether or not it is reasonable for the addressee, under all the circumstances, to be actually annoyed.
Also, on the above point, reference should be made to the ChaplinsJcy case (infra) wherein it is apparent that both the United States Supreme Court and the highest court of the State of New Hampshire dealt with a statute which, superficially, seemed to have dealt only with the intent of the addresser rather than the actual annoyance of the addressee.
Now, section 720 of the old Penal Law was viewed by the courts as being intended to prohibit one person from annoying or interfering with another person in a public place. (See People v. St. Clair, 90 App. Div. 239 revd. by Court of Appeals on other grounds 179 N. Y. 578 and People v. Harvey, 307 N. Y. 588.) Certainly, as to this purpose, the new section 240.25 of the Penal Law (and especially subdivisions 1 and 2) are similar, if not identical.
The Court of Appeals, in dealing with section 720 of the old Penal Law and with a fact situation also involving annoying language, had this to say (p. 592): “ We do not think that the statute gauges criminality by the impressions made on an annoyed or disgruntled citizen. Common sense (and decisions * * *) dictate that language or conduct is to be adjudged to be disorderly not merely because it offends .some supersensitive or hypercritical individual, but'because it is, by its nature, of a sort that is a substantial [emphasis supplied] interference with (our old friend) the reasonable man * * * Annoying language (and, presumably, annoying conduct) must, to be a violation of section 720, amount to a nuisance.”
From this Court of Appeals case this court deduces that the language and/or acts should be of a substantial annoyance to the addressee, who is to be judged, not as a supersensitive or hypercritical individual, but as the ordinary reasonable man. Whether the old “ reasonable man ” test refers only to the ‘£ ordinary, reasonable man on the street ” or to the ‘ ‘ ordinary, *575 reasonable type or class of addressee ’ ’ can be determined from other cases, likewise from high courts.
In Chaplinsky v. New Hampshire (315 U. S. 568) the United States Supreme Court dealt with a New Hampshire statute which likewise proscribed words intended to annoy an individual. The New Hampshire .statute involved was indeed strikingly similar to our subdivision 2 of section 240.25 of the Penal Law. It provided: “No person shall address any offensive, derisive or annoying word to any person who is lawfully in any street or other public place, nor call him by any offensive or derisive name * * * with intent to deride, offend or annoy him ’ ’.
The highest court of the State of New Hampshire construed the purpose of the statute as being to ultimately preserve the public peace since no words were being proscribed “ except such as have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed.” (State v. Brown, 68 N. H. 200, State v. McConnell, 70 N. H. 294.)
The New Hampshire court’s construction also included the following criteria (p. 573): “ Derisive and annoying words can be taken as coming within the purview of the statute as heretofore interpreted only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace * * * The statute, as construed, does no more than prohibit the face-to-face words plainly likely to cause a breach- of the peace by the addressee ”.
The United States Supreme Court agreed with this construction of the statute and indicated that as thus construed does not contravene the Constitution.
It seems, therefore, quite important to consider, at least as a part of the circumstances, who the addressee is; what his role is or should be or into what general class he falls.
Where, as here, the alleged addressee is a police officer directing pedestrian traffic, the court ought to consider whether the officer, who is duty bound to exercise restraint and avoid emotional excesses, would likely react by causing a breach of the peace; the court ought to consider whether the officer, in spite of his training and exposure to crude and trying experiences would likely retaliate in a manner unbecoming a police officer.
Therefore, when we attempt to judge whether the language or gesture would likely be a substantial annoyance to (our old friend) the reasonable man (People v. Harvey, supra), it seems appropriate, in these types of cases, to ask whether the acts or words complained of would (or indeed, should) constitute a substantial annoyance to the ordinary, reasonable police officer.
*576 In considering this, it is true that no court should expect of a police officer a superhuman degree of self-control and discipline. Perhaps today, more than during the days of Gilbert and Sullivan, “a policeman’s lot is not a happy one, happy one!”. Certainly, even today, no officer can be expected to keep his composure after repeated taunts, continued verbal abuse or a course of conduct obvioulsy designed to agitate and provoke. But today, perhaps more than ever before, a police officer ought, at the very least, respect the old adage, “ sticks and stones etc.” by ignoring fleeting, obviously emotional or impulsive language or gestures, albeit crude.
So, where, as here, a fleeting remark (or remarks) with an accompanying gesture are directed toward a police officer, it cannot be said that the police officer’s obligation to exercise restraint and avoid a breach of peace would be substantially tested.
The Court of Appeals dealt'with a similar problem in the case of People v. Todaro (26 N Y 2d 325). In that case the court also dealt with our State’s harassment section and, more specifically, with a situation where a young man, after having been arrested on another charge, was charged with annoying a police officer by threatening language.
There the court said (p. 330): “ Something more must be established than that a teenager, angered or annoyed at being arrested upon what he considered to be insufficient grounds, expressed his anger or annoyance in terms of apparent bravado ’ ’.
Upon all the foregoing it appears that subdivision 2 of section 240.25 of the Penal Law should be construed as proscribing obscene words and/or gestures which substantially annoy a person to the degree that there would be a direct tendency that the person addressed would jeact by an act of violence or a breach of the public peace. Further, in applying this construction, it appears that the trier of the facts should, as part of the entire context, adjudge this direct tendency by application of the old reasonable man standard, with due regard to the type or class of addressee involved.
Finally, it appears that where the words and gesture complained of were fleeting or momentary and indicative of a brief emotional reaction of displeasure or dissatisfaction or complaint, even if unjustified, there can be no conviction under this section.
Because of the foregoing construction and test, this court .finds this defendant “Not Guilty
*577 In reaching this conclusion, this decision should not be construed as an expression of approval of the type of conduct alleged. Those whose duty it is to enforce the law often operate under trying and abusive conditions. They are asked continually to employ great restraint. At least common courtesy seems to require that a police officer, in performing his lawful duties, deserves the co-operation and respect of every citizen.