Lawrence H. Schultz, Jr., J.
Defendant is charged with the violation of trespass, being section 140.05 of the Penal Law (added by L. 1969, ch. 341, amd. by L. 1971, ch. 307, eff. Sept. 1, 1971) and with the violation of harassment being .section 240.25 of the Penal Law (added by L. 1965, ch. 1030, amd. by L. 1967, ch. 791, eff. Sept. 1, 1967). Trial was held without a jury on the charges. At the close of the People’s case and again at the close of the defendant’s case defendant moved that the charges be dismissed. Both the People and the defendant have submitted written briefs and these motions will be taken in order. Briefly the facts are as follows: Defendant and her husband live at 47% South Main Street in the City of Batavia; the complainant is one John W. Anna, an investigator with the New York State Police, who resides at 49 South Main Street, in the City of Batavia. The houses are adjacent to one another. On or about January 1 or 2, 1972, the defendant and her husband took up residence at the address as aforesaid. Shortly after their arrival Mr. Anna informed the defendant that he did not care for dogs and to keep their dog off his property. On several occasions it appears the dog did get onto the complainant’s property and on one occasion or more the complain *511 ant did summon the city dog warden. It does not appear from the testimony that at any time did the complainant tell the defendant or her husband that they would not be allowed to come upon his property. Thereafter and on January 23, 1972, about 4:00 a.m. the complainant was awakened by a dog barking and upon investigation he discovered that the dog had been tied on a leash about 25 feet long, that the dog had in some manner slipped the leash partially and had fallen into the cellar window-well and was choking on the leash. Mr. Anna went down to his cellar, untied the dog and called the city police. The police did come, took the dog and took said dog to the city dog pound. On the same day at about 1:00 in the afternoon, the defendant came on the front porch of the Anna house, knocked on the door and asked Mr. Anna what happened to her dog. The complainant informed her that the dog was at the city dog pound; the complainant then apparently told the defendant to get off the front porch. Several minutes followed, when the defendant had some conversation with the complainant and the complainant, continuing to insist that the defendant leave the premises, finally took the defendant by the arm and removed her from his front porch. From this situation came the allegation of the charge of trespass. The defendant then went onto the front yard of complainant’s house, turned around and said to the complainant, “You are an asshole,” and then apparently retreated to her own house. From this incident arose the charge of harassment.
It should be stated initially that the complainant, John W. Anna, prepared both informations. On both such documents, denoted “ Information/Complaint ”, the full charge was typed up and presented to the City Court for signature, the same having been executed by the complainant. Likewise separate warrants for each charge were also prepared by the complainant. There therefore exists a question and a dichotomy as to whether the complainant is acting in his dividual capacity or as an investigator with the State Police. In any event on the charge of trespass the information denotes the charge as ‘ ‘ the violation of Criminal Trespass, 4th. contrary to the provisions of Section 140.05 of the Penal Law of the State of New York.” The defendant moved that this information be dismissed upon the grounds that there is no such crime as criminal trespass, “ 4th ” degree. This change occurred in chapter 307 of the Laws of 1971 which was effective September 1, 1971 and the former violation of criminal trespass in the fourth degree (L. 1969, ch. 341) is now simply denoted as “ Trespass ” and bears the *512 same section number, section 140.05 of the Penal Law. This motion to dismiss is denied upon the grounds that subdivision 3 of section 100.15 of the Criminal Procedure Law states that “ The factual part of such instrument must contain a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges.” It would seem that the factual part of the information does support the charge of Penal Law, § 140.05, since amended, and does spell out the violation of “ Trespass.”
The violation of trespass is defined as “ A person is guilty of trespass when he knowingly enters or remains unlawfully in of upon premises.” (Penal Law, § 140.05). Subdivision 5 of section 140.00 of the Penal Law sets forth definitions of “ enter or remain unlawfully ’ It is stated therein that a person “‘enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so.” It thereby devolves in the instant situation whether the defendant had a license to enter upon the complainant’s premises, and more specifically upon the front porch of the Anna property. Did, therefore, the defendant knowingly enter and remain unlawfully upon the premises ?
It appears from the testimony given at the trial that the defendant had good cause or good reason to know or to think that the complainant would know of the whereabouts of her dog. She had placed the dog on a leash at 3:00 a.m. on the same date, and in the morning there was no dog attached to the leash. It should also be kept in mind that in our particular society it is normally proper to go to a neighbor’s house or at least to a neighbor’s front porch, ring a doorbell or knock upon a door and seek information without the danger of being charged with trespass. This is so unless one has been specifically told or ordered not to come onto a neighbor’s front porch. It is here the question of license appears and there is no evidence from the testimony given that the complainant had ever withdrawn his consent or his license for the defendant to go upon the complainant’s property.
In People v. Lawson (38 Misc 2d 611) the defendants entered into a real estate management office to induce the manager to lease an apartment to one of the defendants; they were unsuccessful in this endeavor but they persisted in remaining for over two hours in spite of repeated demands by the manager that they leave. They disregarded the manager’s request that they leave because he wished to close the office, it being 5:00 in the afternoon; by remaining they precluded him from leaving *513 unless he wished to leave the office and leave them there which he would be unlikely to do. By remaining in the office and by their refusal to leave when requested to do so by the complainant and by a police officer, their act constituted an unlawful intrusion. Such an act under section 140.05 of the Penal Law, as amended would constitute remaining ‘ ‘ unlawfully in or upon premises.” The defendants were found guilty of trespass. (See People v. Lawson, 38 Misc 2d 611, 614.)
The Lawson case is readily distinguishable from the instant case. It does demonstrate how one can lawfully enter a premises, but how one can have the license to remain withdrawn and how such remaining may become unlawful. It is further distinguishable by constituting an extreme situation of the instant case. The defendant has cited People v. Popack (14 N Y 2d 566) and People v. Barton (18 A D 2d 612). I do not feel that either of these cases is controlling in the instant situation. It is quite evident from the testimony given at the trial that when the complainant asked the defendant to leave that she did leave. The fact that she did not leave as fast as the complainant might desire and the fact that the complainant may have taken her arm and “ assisted ” defendant off his property does not seem to constitute the criminal charge of trespass. The case of Rager v. McCloskey (305 N. Y. 75) would seem to best demonstrate this situation. In this case a civil charge for trespass was brought and the court stated as follows (p. 79): “It is additionally alleged that, although he was repeatedly told to leave, he remained until removed by a police officer. A trespass may consist, not only in making an unauthorized entry upon private property, but in refusing to leave after permission to remain has been withdrawn. (See Be statement, Torts, § 158; Prosser on Torts, p. 89.) Consequently, while Dickstein’s original entry may have been lawful — and quite apart from the effect of the other acts charged to him while on the premises — the allegations that he refused repeated requests to leave and persisted in remaining there for a not inconsiderable period suffice to charge a trespass by Dickstein.”
While the few moments or seconds as the complainant testified, or the few minutes as complainant’s wife testified, of remaining upon the front porch by the defendant may constitute a civil charge for trespass, actionable by the complainant in money damages, there is a vast difference between a civil charge and a criminal charge. For these reasons a criminal charge of trespass, under section 140.05 of the Penal Law simply does not *514 lie. For these reasons the motion of defendant to dismiss is granted.
The information sworn to by complainant states and the testimony supports the information that when defendant left the front porch of the complainant she stood in the vicinity of the public sidewalk and shouted at the complainant, “ You asshole.” Upon this set of circumstances the charge of harassment is based. It is the finding of this court that the charge is sustainable.
In order to sustain a charge of harassment, under subdivision 2 of section 240.25 of the Penal Law, several elements must be present: (1) there must be an intent to harass or annoy; (2) it must be done in a public place; and (3) the language must be abusive or obscene. Section 15.05 of the Penal Law in defining “culpability; definitions of culpable mental states” describes “intentionally” when a person’s “conscious objective is to cause such result or to engage in such conduct.”
There was unquestionably bad feeling between these neighbors, the defendant on the one hand and the complainant on the other. There is testimony by the defendant that when she moved into the house on or about January 2, that the complainant had informed her “to keep that dog in your yard or I’ll shoot him.” There was additional testimony by the defendant that the complainant did not like dogs and made additional complaints about defendant’s dog. When the defendant went to the complainant’s house on January 23, the day in question, she testified tha,t the complainant stated to her ‘ ‘ I don’t want scum like you around here.” And then pushed and shoved her down the porch steps of complainant’s house. There was the additional fact that the complainant had been awakened on January 23 about 4:00 a.m. with a barking dog in his basement which belonged to the defendant and had had the dog removed by the police to the city dog pound. Neither party to the incident was blameless. But in a criminal prosecution, such as this, there is no necessity of the law that the complainant have “ clean hands.” There need not be a balance of equities.
Unquestionably defendant could have been annoyed at the behavior of the complainant; in any event, when she cried out to the complainant, “ You asshole,” it was certainly with intent to harass or annoy another person; certainly her conscious objective was to cause the result of annoyance. In addition to this the defendant was standing in the front yard, or on the front sidewalk of the complainant, and this certainly constitutes *515 a public place. Subdivision 1 of section 240.00 of the Penal Law defines a “public place” as one in which the “ public or a substantial group of persons has access, and includes, but is not limited to, highways ”. The front yard of a residential house on a residential street, where, as testimony was given, the houses were a little more than 25 feet apart from one another, would be a place where the public or a substantial group of persons has access and if the “ highways ” are a public place, then certainly the sidewalks and fronts of residences would be a public place. Defendant cites People v. Paradiso (58 Misc 2d 370); this case is distinguishable inasmuch as in that case the disturbance occurred in defendant’s private residence and was not a “ public place.”
The remaining question is whether the words used by the defendant were abusive or constituted obscene language. There are few cases on this particular criminal statute but most of the reported cases revolve about this particular point. In People v. Brown (60 Misc 2d 696), a policeman was called a “ jackass ”. The court held (p. 697) the words not abusive and that such words should, “ imply an outburst of harsh and scathing words against another.” Also cited by defendant is People v. Todaro (26 N Y 2d 325). There the offending words were “I’ll get you for this ” and were made by a teenager arrested by the police and placed in a patrol car. The Court of Appeals stated that the defendant was expressing ‘ ‘ his anger or annoyance in terms of apparent bravado ” (p. 330). The court stated that something more must be established and dismissed the conviction for harassment. In my opinion in the instant case something more was added, namely a course of conduct between two people over a series of events which occurred on January 23,1972, the day in question.
Also cited by the defendant is People v. Benders (63 Misc 2d 572). In this situation a student marching in a parade was arrested by a policeman and following the defendant’s mouthing of a particularly crude name, the court dismissed the charge on the basis that “ The words and gesture complained of were fleeting or momentary and indicative of a brief emotional reaction of displeasure or dissatisfaction or complaint” (p. 576). Again in this court’s opinion there was more to the act of the defendant due to the situation as described.
In People v. Gingello (67 Misc 2d 224, revd. on other grounds 69 Misc 2d 845), a defendant was found guilty for calling a policeman “an asshole.” In that situation the court found more than an emotional outburst and did find by the acts of the *516 defendant that the language was abusive, was used in a public place and further found that there was an intent to harass or annoy the arresting police officer.
It is my further finding in this case that the complainant was acting in his capacity as a private citizen and not in his capacity as a peace officer. Certainly, from the evidence when the complainant asked the defendant to leave his front porch, when he ushered the defendant from the porch, he was not acting as a State trooper, but as an individual who was annoyed over the conduct of another person.
The motion to dismiss the criminal charge of trespass is granted. The motion to dismiss the criminal charge of harassment is denied. Based upon the foregoing I do hereby find the defendant guilty of the charge of harassment (Penal Law, § 240.25, subd. 2). I do further direct that the defendant appear in City Court with her attorney on or before May 31, 1972 at 10:00 a.m. for sentencing.