William S. Shea, J.
On this trial the two police officers testified, in effect, that they stopped the car driven by one of the defendants for an obvious violation. A ticket for such violation was issued to the driver-owner-defendant. When the officers were returning to the police car one defendant addressed one of the officers by saying ‘ ‘ You stupid bastard. ’ ’ The other defendant, a passenger in the car, addressed the other officer by saying “ You son of a bitch.” Both defendants were then charged with harassment, subdivision 2 of section 240.25 of the Penal Law. Each defendant chose not to testify. Both sides rested after the People’s case.
The constitutionality of subdivision 2 of section 240.25 of the Penal Law is not questioned in any respect. The court therefore assumes it to be constitutional in all respects. That section *758 in pertinent part states: “A person is guilty of harassment when, with intent to harass, annoy or alarm another person: * * ' * 2. In a public place, he uses abusive or obscene language, or makes an obscene gesture * * * Harassment is a violation.” The only question arising here is whether the words “You stupid bastard” and “ You son of a bitch ” as used herein are words that are proscribed under the section.
The Supreme Court of the United States considered this general question in Chaplinsky v. New Hampshire (315 U. S. 568 [decided March 9, 1942]).
The New Hampshire statute, section 2 of chapter 378 of the Public Laws of New Hampshire, reads as follows: “No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name, nor make any noise or exclamation in his presence and hearing with intent to deride, offend or annoy him, or to prevent him from pursuing his lawful business or occupation. ’ ’
In Chaplinshy, the complainant, a police officer, charged that the defendant in a public place did unlawfully repeat the words following, addressed to the complainant, that is to say, “ You are a Goddamned racketeer and a damned Fascist.”
It is apparent that the New York statute (Penal Law, § 240.25, subd. 2) and the New Hampshire statute (Public Laws of New Hampshire, ch. 378, § 2) proscribe the exact same conduct— the use of the offensive or abusive spoken word by one person against another person, in a public place, with the intention to harass or annoy the addressee.
It is now well understood that the right of free speech is not absolute at all times and under all circumstances. Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under the Constitution. (Schenk v. United States, 249 U. S. 47; Cantwell v. Connecticut, 310 U. S. 296, 309, 310.)
In Chaplinshy, the Supreme Court states (supra, p. 573) that “ The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight.” The words are “not to be defined in terms of what a particular addressee thinks.”
This section (Penal Law, § 240.25, subd. 2) prohibits the use in a public place of words likely to cause a breach of the peace.
Argument is not necessary to demonstrate that the words “ stupid bastard ” and “ son of a bitch ” are epithets likely to *759 provoke the average person to retaliation and therefore to cause a breach of the peace.
The defendants cite cases decided by courts of equal jurisdiction as this court (People v. Brown, 60 Misc 2d 696 and People v. Bender, 63 Misc 2d 572) and the court has come across still another case in this same jurisdiction (People v. Smollen, 69 Misc 2d 920).
In Brown, the word yelled by the defendant from across the street to a police officer was “ jackass.” This court agrees that such an epithet is not proscribed by subdivision 2 of section 240.25 of the Penal Law.
In the other two cases, Bender and Smollen, the courts did not follow the test laid down by the Supreme Court in Chaplin-sky: the common intelligence-average addressee test. Those courts did define the words in those cases in terms of what a particular addressee thinks — the policeman, thereby creating a new and different test from that laid down in Chaplinshy. These cases seem to imply that the test of whether or not words are abusive under subdivision 2 of section 240.25 depends on the person, or class of persons to whom the words are addressed; so as to say that if the addressee was a policeman, he should take more abuse than say a doctor, teacher,, priest or longshoreman as the ordinary reasonable police officer. Obviously this could not be a fair standard because the court would have to determine the class of addressee and then determine the ordinary reasonable person of that class, or classes and that is probably why the Supreme Court did not apply it, but rather rejected it, in Chaplinshy, where, too, a police officer was the addressee.
Subdivision 2 of section 240.25 of the Penal Law does not specify a particular class of addressee or say the abuse does not apply to certain addressees. It states that “ A person is guilty of harassment when, with intent to harass, annoy or alarm another person * * * in a public place, he uses abusive” language, etc. (emphasis added).
The police officer is 1 ‘ another person, ’ ’ the same as anyone else. There is no reason for requiring a police officer to take more abuse than any other person. He is considered equal under the law.
It appears that the Court of Appeals of this State has not considered these words in the context of this section (Penal Law, § 240.25, subd. 2). It did, however, consider old section 720 of this Penal Law on a charge of disorderly conduct as a misdemeanor. In that case the court applied the ordinary reasonable man test. In People v. Harvey (307 N. Y. 588, 592), it stated
*760 16 We do not think that the statute gauges criminality by the impressions made on an annoyed or disgruntled citizen. Common sense (and decisions * # *) dictate that language or conduct is to be adjudged to be disorderly, not merely because it offends some supersensitive or hypercritical individual, but because it is, by its nature, of a sort that is a substantial interference with # # * the reasonable man.”
If common sense dictates that criminality is not gauged by impressions made on some supersensitive or hypercritical individual as compared to the reasonable man or average-addressee test then said criminality should not be gauged by the lack of impressions made on a thick-skinned, efficient, insensitive police officer. Neither extreme should be the gauge. In both instances the test should be as stated in Chaplinsky — the common intelligence, average-addressee test. This is the test of the reasonable man.
On the basis of that test a person of common intelligence would conclude that the average addressee would likely be caused to fight by the use of the words used in the case at bar. Such words are offensive and disorderly and are properly proscribed under subdivision 2 of section 240.25 of the Penál Law.
The rest of the testimony of the officers indicates that the defendants, by the use of those words, intended to harass, annoy or alarm the officers in a public place. Each defendant is found guilty as charged.