OPINION OF THE COURT
Frank M. Klinger, J.
Each of these cases present two questions of law, the first of which there is not a great deal of New York State case law concerning and the second of which there is apparently a substantial division among the lower courts of this State. The questions relate to the alleged violation of “harassment” (Penal Law, § 240.25, subd 2). First, what constitutes a public place within the meaning of section 240.00? Second, can abusive or obscene language when directed to police officers constitute the alleged violation?
*956 I find that the defendant, Deignan, with intent to harass, annoy or alarm another person, to wit, Officer Brosch, called Officer Brosch a “fucking asshole”, which language was heard by Officer Chamberlain and Officer Comerford. Officer Comerford heard the defendant use the word “fuck” to Officer Brosch twice. The offensive language occurred in the backyard, by or very close to the steps by the rear entrance of premises at 204 Fifth Avenue.
Officer Brosch arrived at 204 Fifth Avenue, the subject premises, with two other officers to investigate a larceny inasmuch as one of the officers had seen two suspects, later identified as females, apparently steal some wood from the adjoining property owner and bring it on to the backyard of 204 Fifth Avenue. 204 Fifth Avenue was described in the testimony as “two apartments”. The defendant was one of several tenants who lived in one of them. The incident occurred at approximately 10:15 p.m. where a large group of people was assembled on the back lawn of said premises and a “party” in which beer was served was in progress.
In People v Mulcahey, two brothers were each convicted by a jury of harassment and resisting arrest.
On or about 3:25 a.m. a police officer was allegedly run off the road by a vehicle which crossed the double solid line on Bridge Street and came right at his vehicle. The officer then pursued the vehicle (a truck) as it entered the parking lot of the I.G.A. (a supermarket open to the public — although apparently not at that hour). The driver and a passenger, later identified as the two Mulcahey defendants, exited the vehicle by rolling out of it — the passenger doing so even before the vehicle had stopped — and they proceeded to run from the police officers. The officers finally apprehended the two defendants at an area in back of the I.G.A. in between the loading dock and a garbage truck. The testimony was to the effect that there were several people walking along nearby Washington Boulevard and that the defendants’ conversation was loud enough to have been heard by such pedestrians — although none were ever called as witnesses.
Upon apprehending the defendants, the officers performed a “pat down” stop-and-frisk search, pursuant to CPL 140.50. The defendants maintain that such a search *957 was unauthorized. I disagree. The officers had reasonable cause at that point in time to suspect that one of the defendants had committed the misdemeanors of driving while intoxicated (DWI) and reckless driving.
In any event, even though the crime of “resisting arrest” requires that the arrest be “authorized” (People v Harewood, 63 AD2d 876; People v Giorgetti, 103 Misc 2d 118; Budgar v State of New York, 98 Misc 2d 588), the fact that the police officer had no basis for an arrest (thereby preventing the successful maintenance of the charge of “resisting arrest”), is not a defense and will not prevent a conviction of the defendant on the charge of “assault” — the “assault” occurring subsequent to the invalid “arrest”. (People v Lopez, 97 Misc 2d 124; see, also, People v Harewood, supra.)
This is so because the very statute for resisting arrest itself (Penal Law, § 205.30), indicates “an authorized arrest” as an element of the crime charged. Harassment (Penal Law, § 240.25), like assault (Penal Law, § 120.00) contains no such requirement. Therefore, I do not see how even if the “pat down” search were “unauthorized” that that fact would require a dismissal of the harassment charges as a matter of law.
In any event, both defendants then called the officers “fucking assholes” and a “fucking idiot”. Coincidentally, the two officers involved were the very same Brosch and Chamberlain. The comments, however, were heard not only by both of those officers but by a State University security officer at Oswego who was on the scene, and were, in fact, admitted to by the defendants — although in a somewhat different context.
It was then alleged by the officers and the SUCO officer that the defendants resisted arrest. The issues of whether or not the defendants resisted arrest, what they stated, their intentions, the question of whether or not they were in a “public place”, and all other elements of both the offenses of harassment and resisting arrest for each defendant were submitted to the jury for its consideration and the jury returned verdicts of guilty on all charges.
Inasmuch as it is the established law of this State that despite section 35.27 of the Penal Law, a charge of “resist *958 ing arrest” cannot be successfully prosecuted when the “arrest” is unauthorized (People v Harewood, supra; People v Giorgetti, supra; Budgar v State of New York, supra), it is, therefore, clear that notwithstanding the jury verdict, the convictions of “resisting arrest” cannot stand if the harassment arrests were unauthorized.
We thus proceed to the two questions raised at the outset.
The question of what constitutes a “ ‘[p]ublic place’ ” within the meaning of sections 240.00 and 240.25 of the Penal Law of the State of New York has given rise to surprisingly few reported decisions, particularly since enactment of the definition of “‘[pjublic place’” in 1965, which definition states that: a “ ‘[pjublic place’ means a place to which the public or a substantial group of persons has access, and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, playgrounds, and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence.” (Penal Law, § 240.00; emphasis added.)
Initially we note that the charges of harassment at bar differ from that of disorderly conduct in that disorderly conduct “requires proof of an element — ‘intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof’ (Penal Law, § 240.20) — which is not required to establish harassment”. (People v Alvarez, 66 Misc 2d 205 [App Term, First Dept]; emphasis added.)
It has been held as far back as People v Ripke (115 NYS2d 590, 593), that the front porch of a city dwelling is a public place. The court added that “[t]he mere fact that no one happened to be in the immediate neighborhood at the time except a couple of small children, does not make the place any less public.” (Emphasis added.)
It seems clear to me that the statutory difference between section 240.20, disorderly conduct, and subdivision 2 of section 240.25, harassment, is that the former requires an intent to cause public inconvenience, annoyance, or alarm or a reckless risk thereof, whereas the latter simply requires that the conduct occur in a “public place” but does *959 not require a substantial risk of public inconvenience, annoyance, or alarm.
In People v Mulcahey, there is no question in my mind that the area at which the defendants made their remarks was a “public place” in the sense that the public had access to this area. There is no indication that the public was in any manner prohibited from walking to or through the area of the loading dock where the incident occurred.
Even if there had been no passersby within earshot, the fact that there may not have been public then and there present, would not change the fact of the harassment, since I believe that if our legislators required a public presence to constitute the offense of harassment, they would have so stated, as they did, in fact, state for disorderly conduct (Penal Law, § 240.20). I, therefore, affirm the jury’s finding that the incident of harassment in the two People v Mulcahey cases occurred in a “public place”.
The case of People v Paradiso (58 Misc 2d 370, 373) provided an extensive discussion of the question and concluded that: “In the opinion of the court a private residence does not fall within the definition of a public place as defined in section 240.00 of the Penal Law without a showing of special circumstances”.
A later case of People v Cecere (70 Misc 2d 510, 514-515) also provided extensive discussion of the question of “public place”. There the defendant who yelled “you asshole” to the complainant was standing in the “front yard, or on the front sidewalk of the complainant, and this certainly constitutes a public place.” The court in Cecere squarely held that the front yard of a residential house on a residential street is a “public place” within the meaning of that section and it distinguished People v Paradiso (supra) in that in Paradiso, the disturbance occurred in the defendant’s residence. The court in Cecere found the defendant guilty for using this language.
Next comes People v Taylor (92 Misc 2d 29, 31) wherein Judge Glass reached the “inescapable conclusion that the hallway and porch or stoop of defendant’s two-family house are not public places.” Judge Glass furthermore cited a decision reported in the New York Law Journal in which *960 Mr. Justice O’Connor stated that: “It would seem totally inconsistent to limit the definition of a home to be that area surrounded by four walls covered by a roof and to exclude therefrom a backyard, a driveway or a porch.” (People v Merced, NYLJ, May 21, 1976, p 11, col 4.)
However, the charge in People v Taylor (supra) concerned possession of a loaded gun which would be a felony or a misdemeanor depending upon whether or not it was possessed in the defendant’s “home” within the meaning of subdivision 4 of section 265.02 of the Penal Law which provides no such definition of “home”. Since the definition of “public place” under section 240.00 is stated by that section to be applicable to article 240 only, one can still argue as to whether an area might constitute a person’s “home” within the meaning of section 265.02 and yet meet the criteria sufficient to constitute a “public place” within the meaning of section 240.00.
In any event, lacking any direct case law totally on point to this situation concerning the backyard of two apartments, we turn directly to the literal language of the statute itself. “ ‘Public place’ means a place to which the public or a substantial group of persons has access”. If the definition ended there, it would appear that the defendant was not guilty as a matter of law, since there was no proof that the public or a substantial group of persons had access to the backyard of apartments at 204 Fifth Avenue. Granted that a substantial group of persons were, in fact, there on the date and time of the alleged infraction. However, as defendant aptly points out, they were defendant’s invitees and one does not transform one’s home, house or portions thereof from a private dwelling to a “public place” simply by holding a party and/or inviting guests.
Unfortunately for defendant, however, the definition under section 240.00 does not end there — it goes on to state that a public place “includes, but is not limited to * * * hallways, lobbies and other portions of apartment houses * * * not constituting rooms or apartments designed for actual residence.” (Emphasis added.) Thus the statute enacted by the Legislature tells us that if this offense had occurred in an indoor hallway between or connecting the two apartments (if indeed such a hallway exists) that by *961 definition the offense would have occurred in a “public place”. Certainly a hallway within a residence, dwelling, structure or apartment would appear to be far more private and less “public” than would the backyard. It then follows logically and inescapably, a fortiori, that the backyard to premises designated as “apartments” must constitute a “public place” by definition.
To approach the matter from a different angle: suppose the prosecutor had proven that the offense had instead occurred at a school, a park, a playground, or a street, would he also have had to prove that the public or a substantial group of persons had access to that particular area? I think not, since these areas — no less than “other portions of apartment houses * * * not constituting rooms or apartments designed for actual residence” — are deemed to be public places by statutory definition. The backyard of apartments, therefore, must constitute an “other portion * * * of an apartment house” which is not a room or apartment designed for actual residence. (If it were not, then the backyard of apartments would still be clearly and self-evidently an even more public place than such other portions of an apartment house which are specifically defined as public places.) It is worth noting here that the statutory definition uses the term “includes” rather than “may include” to define the places which constitute a “public place”, which would appear to specifically remove any discretion to find one of the enumerated areas to be other than a public place.
Furthermore, inasmuch as the Legislature chose not to designate any specific number of “apartments” required to render areas of “apartments” public places within section 240.00 of the Penal Law, this court has no power to substitute its wisdom for that of the Legislature and hold that 2 or 3 or 4 “apartments” are not a sufficient number to constitute “apartments” within the meaning of section 240.00.
Last, but not least, although the point was not raised by the defendant directly, we consider the question of whether the section 240.00 definition of “public place” may constitute an unconstitutional discrimination against those who are alleged to commit the violation of harassment in a *962 “hallway”, “lobby”, or “backyard” or other portions of an apartment house, vis-á-vis persons who may be alleged to have committed similar violations in the same areas of an owner-occupied “one-family dwelling” or “two-family dwelling”. (See People v Taylor, supra.) Although I have my concerns in this area, based upon the heavy presumption of constitutionality which attaches to all of our statutes (cases too numerous to cite), I decline to find section 240.00 of the Penal Law to be unconstitutional.
The next question raised by all of the cases at bar is whether conduct which would otherwise constitute the violation of harassment, can legally constitute that violation when the “victim” or complainant is a police officer.
There is definitely a division of the lower courts concerning this question. Those answering the questions in the negative are People v Brown (60 Misc 2d 696), People v Benders (63 Misc 2d 572) and People v Smolen (69 Misc 2d 920). The cases holding that such conduct can legally constitute harassment include People v Cecere (supra [an off-duty policeman]), People v Gingello (67 Misc 2d 224, revd on other grounds 69 Misc 2d 845) and People v Cuomo (70 Misc 2d 757).
I definitely believe that to the extent that the statute of harassment has itself on innumerable occasions been held to be constitutional, there is no justification for creating a judicially imposed exception or defense to that statute — namely, that a person can legally harass by the use of abusive or obscene language another citizen, if, and only if that citizen happens to be a police officer.
Such a judicially imposed exception is not warranted legally or morally. The Legislature could have placed such an exception in the law if it so desired (although one might question its constitutionality), but did not choose to do so.
Certainly it has been oft repeated that police officers are trained to deal with such situations. However, to require a police officer to quietly face and accept such abuse without recourse is not only unfair to the police officers but is, in my view, against public policy.
What is a member of the public to believe or infer about our system of law and our government under law if and *963 when he or she is compelled to witness an officer of the law vilified by abusive and obscene terminology but powerless to take any corrective action and left without recourse?
Would members of the public accurately understand and perceive that their rights to be free from harassment and abuse will nonetheless be protected by this officer of the law who is apparently incapable of protecting himself against such harassment and abuse? Or will the members of the public likely conclude that our system of law no longer offers any protection to victims of harassment or abuse?
As Judge Shea well stated in People v Cuomo (70 Misc 2d 757, 759, supra), in reaching the same conclusion I now reach: “The police officer is ‘another person’, the same as anyone else. There is no reason for requiring a police officer to take more abuse than any other person. He is considered equal under the law.”
Indeed, are we to state that a teacher, or a machinist or a typist or a person who is unemployed may legally go about their business without being subjected to harassment or abuse — but that a policeman does not have that right?
Many who urge a judicially imposed exception to subdivision 2 of section 240.25 quote liberally from People v Todaro (26 NY2d 325). In that case our highest court, the Court of Appeals, did hold that the statement to a police officer “I’ll get you for this” did not suffice to establish the violation of harassment. That language was, of course, not obscene nor could it properly be termed “abusive”.
The proponents of this judicially imposed exception theory, however, failed to take note of the fact that in addition to being charged with “harassment” for the “I’ll get you for this” comment, the defendant in Todaro was also charged with disorderly conduct for making the statement to the officer that “you can’t tell us to f--g move” and that the Court of Appeals affirmed the defendant’s conviction for disorderly conduct for the use of such language to the police officer.
It, therefore, seems to me that to the extent that the Court of Appeals has spoken on the question in Todaro and the United States Supreme Court has spoken on the ques *964 tion in Chaplinsky v New Hampshire (315 US 568) they have clearly indicated that verbally abusive conduct by individuals against police officers is prosecutable as disorderly conduct or harassment, as the case might indicate. In Chaplinsky, the United States Supreme Court affirmed the conviction of a defendant for using abusive language to a police officer.
I, therefore, deny all of the defendant’s motions. I find the defendant, Michael Deignan, to be guilty as charged and I uphold all four guilty verdicts for the two Mulcahey defendants.