OPINION OF THE COURT
W. Patrick Falvey, J.
This case, under the facts presented, appears to be one of first impression.
*39 The defendant-appellant was convicted on May 6, 1996 of the violation of disorderly conduct (Penal Law § 240.20 [7]) following a bench trial before the Honorable Danny M. Hibbard, Penn Yan Village Court Justice. The defendant was sentenced, on the same day, to a one-year conditional discharge and $250 fine. The appellant brings this appeal from said conviction pursuant to CPL 450.10 (1) and 460.10 (3).
The court granted a stay of appellant’s sentence on June 26, 1996, pending the determination of this appeal.
Oral argument was had before this court on September 26, 1996, whereupon the case was marked for final submission on October 6, 1996.
Appellant in her affidavit of errors argues: (1) the charge of disorderly conduct was not supported by the legal act of feeding cats for if they weren’t fed they would have died of starvation; (2) the information was insufficient as a matter of law and fact because feeding stray cats is not illegal; (3) the arrest of the appellant was a pretext to attempt to force her to consent to the Code Enforcement Officer and Police Chief entering her house without a proper warrant; (4) the term of the conditional discharge requiring the Code Enforcement Officer to inspect the defendant’s house by June 24, 1996, is not a legal condition contemplated under Penal Law § 65.10 (1), and (5) the People failed to prove that the appellant’s acts were intended to cause public inconvenience, annoyance or alarm or that these acts recklessly created a risk thereof.
The information alleged that on September 12, 1995, the defendant was "guilty of Disorderly Conduct when with intent to cause public inconvenience, annoyance, or alarm, or recklessly creates a risk, thereof she creates a hazardous or physically offensive condition by any act which serves no legitimate purpose”.
The facts on which the charge was based were that over a period of several years, the defendant harbored many cats at her residence located at 132 Benham Street, Penn Yan, New York. She allowed them to enter or leave from her house through open windows. She also watered and fed them on a daily basis even after the Chief of Police told her to stop. The cats contaminated the lawns of her neighbors which resulted in the reckless creation of a physically offensive condition that served no legitimate purpose. The animal control officer testified that he observed numerous dying and/or dead cats, cat feces and urine. In addition, two neighbors testified as to the effect of the cats on their property.
*40 The defendant, who denied living at 132 Benham Street, was unwilling to allow village officials to aid in the inspection of her premises, seal up the property or stop feeding the cats that gathered in her house. This created the alleged hazardous and physically offensive condition for which she was arrested.
To constitute the offense of disorderly conduct in violation of section 240.20 (7) of the Penal Law there must be evidence beyond a reasonable doubt that this defendant committed acts in violation of the statute.
In addition, the proscribed conduct must be accompanied by the stated culpable mental state of intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof. (See, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.20, at 219-220; People v Deignan, 116 Misc 2d 955.)
The Court of Appeals has emphasized that "the disruptive behavior proscribed by our disorderly conduct statute be of public rather than individual dimension”. (People v Munafo, 50 NY2d 326, 331.) Furthermore, the behavior must occur in a public rather than a private place. (People v Dalton, 121 NYS2d 915.) A private residence does not fall within the definition of a "public place” as defined in Penal Law § 240.00 (1) without a showing of special circumstance. (People v Deignan, supra; Penal Law § 240.00 [1].) And, annoying language and presumably annoying conduct must, to constitute disorderly conduct, amount to a nuisance. (People v Sharpe, 207 Misc 39.)
However, a nuisance may be public or private, i.e., a private nuisance is one which violates only private rights and produces damages to but one or a few persons (81 NY Jur 2d, Nuisances, § 6), and a public nuisance is "conduct or omission which offend[s], interfere^] with, or cause[s] damage to the public in the exercise of rights common to all in a manner such as to offend public morals, interfere with use by the public of a public place, or endanger or injure the property, health, safety, or comfort of a considerable number of persons.” (81 NY Jur 2d, Nuisances, § 5.)
It is important to note that only a public nuisance may be made the basis of a criminal prosecution (see, Penal Law § 240.45) and only the public, through the proper officer, may sue to enjoin or abate a public nuisance, whereas only a private individual may sue to abate a private nuisance. (81 NY Jur 2d, Nuisances, § 4.)
An information is facially insufficient when those injured constitute a distinct and finite group as this does not satisfy *41 the statutory requirement that conduct endanger the public-at-large. (People v Kotler, 141 Misc 2d 675.) Therefore, in light of the specific intent required for criminal nuisance, a court should not impose criminal liability when a particular case involves what is essentially a civil action in equity to abate a public nuisance. (People v Markovitz, 102 Misc 2d 575.)
Clearly, the Village of Penn Yan has established procedures under the Code of the Village of Penn Yan (hereinafter referred to as PYVC) to deal with unoccupied buildings; public nuisances (§§ 58-3 — 58-6); and/or enforcement of housing standards (§§ 114-84 — 114-97).
The record is clear that the defendant was charged with disorderly conduct for her unwillingness to allow the Code Enforcement Officer to enter her premises.
There is no proof that the Code Enforcement Officer sought a warrant (PYVC § 58-6 [A]) to enter, nor did he make an application to the appropriate municipal agency for abatement of the situation. Certainly, the Code Enforcement Officer did not have to enter (PYVC § 114-90) in order to cite the defendant. On the contrary, the record shows that the defendant did not reside at the house and there was ample evidence to proceed, without entry, pursuant to PYVC § 58-6 or § 114-89 (C) (1), (2), (3) and/or (D). There has been no showing that the village complied with its own ordinance in order to deal with the cat problem.
The disorderly conduct statute was promulgated to address public acts affecting the public in general, not private acts which in essence constitute a private nuisance. Therefore, in order to sustain a conviction, the offensive conduct must be public in nature and must cause inconvenience, annoyance or alarm to a substantial segment of the public or be of such nature and character that it would appear beyond a reasonable doubt that the conduct created a risk that a breach of the peace was imminent. (People v Chesnick, 302 NY 58; People v Szepansky, 25 Misc 2d 239.) Perhaps more importantly, it must be established beyond a reasonable doubt that the accused intended to breach the peace. (People v Hill, 60 Misc 2d 277.)
It should be emphasized that this court does not condone the defendant-appellant’s conduct. However, without reflecting on what other measurers, civil or criminal, may have been legally supportable in these circumstances to enforce the applicable village ordinances regarding the harboring of a large number of cats, the court must give due regard to the principal that penal responsibility cannot be extended beyond the scope of a charge lodged and proved.
*42 Therefore, the statute of disorderly conduct may not be molded to fit the facts, and to warrant conviction, the facts must fit the disorderly conduct statute under which the defendant has been charged. (People v Hill, supra.)
This court is compelled to conclude, under the circumstances here, that neither the defendant’s refusal to let the Code Enforcement Officer enter the building, nor her feeding and watering of the cats indicates an intent to breach the public peace or create an imminent risk thereof.
All other issues raised by the appellant in her appeal are denied as moot given the foregoing.
Accordingly, on the facts and on the law, the judgment of conviction should be reversed, the information dismissed and the fine remitted.