OPINION OF THE COURT
Sam Eisenberg, J.
Each of the above-named defendants has been charged separately with the offense of harassment of a police officer in violation of section 147-2 of the Code of the City of Mount Vernon.
Each of the defendants has challenged the constitutionality of the ordinance under which he has been charged with, harassment of a police officer. Since this issue of constitutionality is common to each of the cases, this *726 decision will dispose of that issue for each of the defendants as it affects the charge of harassment against him. No disposition is made hereby of any other charges against the defendants.
Each defendant is charged with directing obscene language against a police officer, in a public place, in the presence of another person or other persons with intent to annoy, harass or alarm the police officer.
The charges are made under chapter 147 of the Code of the City of Mount Vernon as amended. Section 147-1 of that chapter enunciates the legislative intent of the ordinance and section 147-2 sets forth the offense itself. Those sections read as follows:
“Chapter 147 — harassment of police officers
“147-1 Legislative Intent
“The purpose of this chapter is for the protection of sworn police officers during the performance of their duties, and, in support of that aim, the following Legislative Findings are hereby made:
“1 — That the Ordinance is for the protection of the City’s Police Officers pursuant to § 10(a)(1) of the Municipal Home Rule Law, which provides that a municipality may adopt local laws for the protection, welfare and safety of its officers and employees.
“2 — That Police Officers are not second class citizens who may be publicly vilified and abused with impunity while the average citizen is protected from public vilification.
“3 — The presence of a third person will tend to deter the making of unjust charges of harassment by Police Officers.
“4 — The efficiency and morale of police officers is negatively affected if public abuse and vilification of these officers is permitted.
“5 — The physical safety from attack is threatened by insulting, inciting language directed to a police officer in a public place. Such language may encourage and incite a physical assault upon the police officer by others present in the public place.
*727 “6 — Only those epithets and gestures which common knowledge would classify as ‘fighting words’ or actions should be prosecuted.
“7 — That this Ordinance is not inconsistent with any State law.
“147-2 Violation
“A person is guilty of harassment of a police officer when:
“a) — with intent to annoy, harass, or alarm said police officer;
“b) — in a public place, with at least one other person present, beside the addresser and addressee police officer;
“c) — directs obscene, abusive, ‘fighting’ words; or
“d) — makes an obscene gesture directed to a police officer.”
The language of the ordinance is virtually identical with subdivision 2 of section 240.25 of the Penal Law of the State of New York except that the Mount Vernon ordinance is confined to police officers as the addressees of the obscene language and gestures while the Penal Law statute makes no such distinction. Also, the city ordinance requires the presence of a person in addition to the addresser and the addressee when the offense is committed. For comparison purposes, the following is the language of section 240.25 of the Penal Law:
“§ 240.25 Harassment.
“A person is guilty of harassment when, with intent to harass, annoy or alarm another person * * *
“2. In a public place, he uses abusive or obscene language, or makes an obscene gesture * * *
“Harassment is a violation.”
It is evident that the Mount Vernon ordinance was enacted to overcome the effect of judicial, interpretations of subdivision 2 of section 240.25 of the Penal Law as affecting the use of obscene language directed against a police officer. That purpose has been stated by counsel for the People in his arguments herein and is explicit in the legislative intent set forth in subdivision 1 of section 147-1 of the Code of the City of Mount Vernon.
*728 This court has heretofore had the opportunity to comment on the judicial interpretations with respect to the use of obscene language, addressed to police officers as violations of subdivision 2 of section 240.25 of the Penal Law. It has noted that to constitute the offense of harassment, the language must be such as to be of substantial annoyance to the ordinary, reasonable man as distinguished from one who is supersensitive or hypercritical. (See People v Benders, 63 Misc 2d 572, and cases cited therein.)
On the other hand, it appears that where the addressee of the obscene language is a police officer, then the offensiveness of the language is to be measured against the sensibilities of the ordinary, reasonable police officer rather than the Ordinary reasonable man. (See People v Collins, 31 NY2d 878; People v Pecorella, 32 NY2d 920; People v Burford, 34 NY2d 699; People v Bacon, 37 NY2d 830.)
The Mount Vernon ordinance was clearly enacted to fill a perceived gap in the law created by the judicial interpretations of subdivision 2 of section 240.25 of the Penal Law as affecting police officers. That intention may be found in the city council legislative intent expressed in subdivision 2 of section 147-1 of the Code of the City of Mount Vernon, previously cited and set forth.
The defendants contend, however, that Mount Vernon’s city council had no authority to enact this antiharassment ordinance for the protection of police officers within its city and is therefore unconstitutional. Section 10 (subd 1, par [ii], cl a, subcl [1]) of the Municipal Home Rule Law permits a city to enact legislation for the “protection, welfare and safety of its officers and employees”. But there are limitations on the legislative authority of a municipality. Where it is clear that a State law indicates a purpose to occupy the entire field, a local ordinance which seeks to legislate within that field is prohibited (People v Lewis, 295 NY 42). Similarly, a municipal legislative body may not enact laws which are inconsistent with any general laws enacted by the State Legislature. (Municipal Home Rule Law, § 10, subd 1, par [ii].)
*729 The city ordinance herein must be tested against these principles and the scope and intent of subdivision 2 of section 240.25 of the Penal Law.
The People argue that by judicial interpretation, subdivision 2 of section 240.25 of the Penal Law confines the offense of harassment by obscene language or gestures to language or gestures addressed to private citizens and that, in effect, under subdivision 2 of section 240.25 of the Penal Law there is no offense of harassment by obscene language or gestures addressed to police officers. This condition, the People argue further, is discriminatory against police officers, has reduced them to second class citizens and has permitted their vilification and abuse with impunity. For that reason and to protect its police officers the City of Mount Vernon enacted chapter 147 of its code, entitled “Harassment of Police Officers”, contending that it extends the Penal Law and is not inconsistent therewith. The contention of the People raises a novel issue. No claim is made that the State statute by its express or implied language or provisions excludes police officers from its protection. And, it would be a misreading of the related decisions to conclude that the courts have interpreted subdivision 2 of section 240.25 of the Penal Law as intending to protect only private citizens and to exclude police officers from its coverage. The rationale of the distinction made by the courts in such cases as People v Collins (supra), People v Pecorella (supra), People v Burford (supra) and People v Bacon (supra), lies in the view that police officers are trained to cope with obscene outbursts and their responses to words which would incite the ordinary, reasonable man should be more restrained and more controlled. In the words of People v Benders (supra, p 576): “[Pjerhaps more than ever before, a police officer ought, at the very least, respect the old adage, ‘sticks and stones, etc.’ by ignoring fleeting obviously emotional or impulsive language or gestures, albeit crude.”
And according to Mr. Justice Powell in Lewis v City of New Orleans (415 US 130, 135): “[A] properly trained officer may reasonably be expected to ‘exercise a higher degree of restraint’ than the average citizen, and thus be less likely to respond belligerently to ‘fighting words.’ ”
*730 In order for words to be criminally offensive they must be “ ‘fighting words’ ” — “[words] ‘which by their very utterance inflict injury or tend to incite an immediate breach of the peace.’ ” (Gooding v Wilson, 405 US 518, 522.) Anything less might be constitutionally protected. (Lewis v City of New Orleans, 415 US 130, supra.) Thus, the need for the distinction between words addressed to a reasonable man and words directed to a police officer. Collins (supra), Pecorella (supra), Burford (supra) and Bacon (supra) have not declared that subdivision 2 of section 240.25 of the Penal Law was not intended to apply or cannot be construed to apply to police officers. Rather, they have protected the integrity and constitutionality of that State statute by insisting that the offensive language must be “fighting words” — whose capacity to incite must be tested against the surrounding circumstances and the addressee. Having concluded that there was no intention either legislatively or judicially to confine the protection of subdivision 2 of section 240.25 of the Penal Law to private citizens, we must equally conclude that the State by the very language of subdivision 2 of section 240.25 of the Penal Law, being devoid of exclusion, has pre-empted the entire area of offenses covered by that statute. That conclusion is reinforced by the frequent consideration by the courts of the subject of abusive language addressed to police officers as an offense of subdivision 2 of section 240.25 of the Penal Law. It has been constrained to consider such charges, precisely because they may be offenses under the Penal Law. Chapter 147 of the Code of the City of Mount Vernon has encroached upon a field pre-empted by the State, and by its restriction to police officers it is inconsistent with the Penal Law.
There is considerable doubt about the authority of any municipality in this State to enact any legislation which would enter the field covered by New York State’s Penal Law. That view follows from Chief Judge Cardozo’s exposition of the line of demarcation between matters which are of particular local concern and others which are purely State affairs as stated by him in his concurring opinion in Adler v Deegan (251 NY 467). There are some affairs intimately connected with the exercise by a city of its *731 corporate functions and there are other affairs such as the law of crimes which are exclusively within the State’s domain. A municipality may not regulate conduct which is within the State’s domain.
The offense of harassment is not a concern to the City of Mount Vernon as a municipality. Its ordinance on the subject is an invalid entry into a State affair.
But, the People contend that even if the State has preempted the field of harassment by obscene language or gestures, and even if the Mount Vernon ordinance is inconsistent therewith it may be upheld because of a special local problem created by the judicial interpretations of the State statute. (See Robin v Incorporated Vil. of Hempstead, 30 NY2d 347.) The claimed local problem was enunciated in the stated legislative intent of section 147-1 of the Code of the City of Mount Vernon. That claim will not support the validity of the Mount Vernon ordinance. The local problem which will sustain local legislation in the face of pre-emption by the State must be peculiar to the municipality. It must be a response to a special local problem. Mount Vernon’s problem arising from the decisional law under subdivision 2 of section 240.25 of the Penal Law is not unique to it. If there is a special problem growing out of these judicial determinations, it is likely that all cities, towns and villages must be equally and similarly affected.
It should be noted too that the Mount Vernon ordinance does not, in fact, supply a sanction not now available under subdivision 2 of section 240.25 of the Penal Law. The test of guilt under section 147-2 of the Code of the City of Mount Vernon would be identical with the test applied by the Court of Appeals with respect to violations of subdivision 2 of section 240.25 of the Penal Law for obscene language addressed to a police officer. Collins (supra), Pecorella (supra), Burford (supra) and Bacon (supra) have all declared that where police officers are involved, the offensiveness of the language must be measured against the sensibilities of the ordinary, reasonable police officer rather than the ordinary, reasonable man. Because of their special training, words themselves are not sufficient to incite police officers to violent responses. That does not mean to say that obscene words addressed to a police *732 officer, coupled with other provocative acts, conditions or circumstances, may not make out the offense of harassment under subdivision 2 of section 240.25 of the Penal Law. However, these same tests and guidelines would have to be applied to the determination of guilt or innocence under the Mount Vernon ordinance. The reasonable man test as distinguished from the reasonable police officer test could not properly be applied to Mount Vernon’s ordinance.
The People have asked this court, as a court of original jurisdiction, to refrain from declaring the instant Mount Vernon ordinance unconstitutional. This court recognizes that there is a strong presumption of constitutionality. In Lighthouse Shores v Town of Islip (41 NY2d 7, 11), the court discussed this presumption: “The exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. While the presumption is rebuttable, unconstitutionality mast be demonstrated beyond a reasonable doubt and only as last resort should courts strike down legislation on the ground of unconstitutionality.”
But, the court can find no basis on which to save the Mount Vernon ordinance. It has ventured into a preempted State field and it adds nothing to the existing law in these matters. For these reasons, the court is compelled to declare section 147-2 of the Code of the City of Mount Vernon unconstitutional and to dismiss the charges thereunder as against each of the defendants herein.