[598 NYS2d 806]

In the Matter of PENNY LANE/EAST HAMPTON, INC., Petitioner, v COUNTY OF SUFFOLK et al., Respondents.

Second Department, June 14, 1993

### APPEARANCES OF COUNSEL

*Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P. C.,* New York City *(Victor Rabinowitz* and *Ellen Winner* of counsel), for petitioner.

*Robert J. Cimino, County Attorney* of Suffolk County, Hauppauge *(Caroline Levy* and *Arline Z. Willing* of counsel), for respondents.

### OPINION OF THE COURT

BALLETTA, J.

We are called upon in this case to determine whether a Suffolk County local law prohibiting the display of what is deemed to be obscene material is invalid as having been preempted by State obscenity laws. We now hold that a local government does not have the power to enact its own code governing obscenity, since the provisions of the New York State Penal Law and CPLR 6330 (which authorizes local officials to bring actions enjoining retailers from selling obscene materials) have preempted local governments from acting in this area. The local law in question is, therefore, invalid and unenforceable.

### I

Local Laws, 1985, No. 2 of the County of Suffolk added Suffolk County Code chapter 367, with the expressed purpose of prohibiting "the unobstructed display of sexual materials * * * which portray obscene sexual performance, deviate sexual performance, or simulated sexual conduct". The display of such materials, according to the legislative findings, posed: "a threat to the health, safety, morals and general welfare of the people of the County of Suffolk because it can encourage and promote anti-social behavior. It is further declared that the prominent display of such obscene materials in public areas poses an intrusion upon individual privacy and constitutes a threat to impressionable young people indiscriminately exposed to such materials" (Local Laws, 1985, No. 2 of County of Suffolk § 1).

The subject code provisions prohibit the display: "for use or sale on any window, showcase, door, or similar public place any written or pictorial material which depicts *obscene sexual performance* unless such material shall be obscured from public view in such a manner as not to make it readily visible to the public, except as to the name or title of such material when on display" (Local Laws, 1985, No. 2 of County of Suffolk § 3 [a]; emphasis added).

The term "sexual performance" is defined therein as:

"(1) contact between any part of the genitals of one person and the genitals, mouth, or anus of another person; or

"(2) contact between a person's mouth, anus or genitals and the mouth, anus or genitals of an animal or fowl; or

"(3) manipulation or *[sic]* a person's genitals; or

"(4) actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals; or

"(5) acts of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or if such person be a female, breasts; or

"(6) portrayals of nudity" (Local Laws, 1985, No. 2 of County of Suffolk § 2 [k]).

The above definition of "sexual performance" must be read in conjunction with the definition of "obscene" since section 3 (a) provides that it is only the display of materials depicting an "obscene sexual performance" which is subject to the law:

"Obscene" shall mean material which:

"(1) considered as a whole, predominantly appeals to the prurient interest in sex of individuals; and

"(2) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material; and

"(3) considered as a whole, lacks serious literary, artistic, political, and scientific value" (Local Laws, 1985, No. 2 of County of Suffolk § 2 [e]).

The Suffolk County Department of Consumer Affairs found the petitioner Penny Lane/East Hampton, Inc. (hereinafter Penny Lane) a retailer of candy, sundries, cards, and other miscellanea, guilty of five violations of this law arising from the display of one poster and four postcards.

The origin of this action lies with the display by Penny

Lane of a poster featuring a grossly overweight naked woman who counseled the viewer to "think thin" and who was surrounded by a list of common foods and their caloric contents. This display of the "Official Miss Icebox Calorie Counter" was the subject of an investigation by the Suffolk County Department of Consumer Affairs in late 1989. An investigator visited the store to investigate complaints regarding the poster which he found to be in plain view on a Coca Cola vending machine inside the store. The investigator subsequently purchased the poster as well as four postcards which depicted a male and several females in various stages of undress, including some frontal nudity and exposure of the genital areas.

A hearing was conducted by the Department of Consumer Affairs, which found that Penny Lane had violated code provision and imposed fines. The Hearing Officer, citing the definition of "sexual performance" as including nudity, concluded that the poster and all four postcards depicted "sexual performance".

■ Penny Lane thereafter brought the instant proceeding pursuant to CPLR article 78 to review the determination of the Suffolk County Department of Consumer Affairs. The petitioner also seeks a judgment declaring that the Local Law is preempted by the Penal Law and CPLR 6330 and was in violation of the Constitution, both on its face and as applied. The case was transferred to this Court pursuant to CPLR 7804 (g). The Supreme Court did not address the declaratory judgment aspects of the case. However, since a proceeding pursuant to CPLR article 78 may be converted into a declaratory judgment action when appropriate (see, Matter of Morgenthau v Roberts, 65 NY2d 749), this Court has full authority to grant the requested relief.

This case presents a question of apparent first impression for New York courts: does a local government have the power to enact its own code governing obscenity? As will be seen, at least four States—New Jersey, Michigan, Colorado and California—have held that similar local ordinances had been preempted by the State-wide criminal codes.

## II

New York Municipal Home Rule Law § 10 provides in general that in addition to any other powers granted to it in the State Constitution, the Statute of Local Governments or,

in any other law, a local government "shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law" with respect to "[t]he government, protection, order, conduct, safety, health and well-being of persons or property therein" (Municipal Home Rule Law § 10 [1] [ii] [a] [12]). This power to enact local legislation is secured to local governments by the State Constitution (NY Const, art IX, § 2 [c] [10]) and is to be liberally construed *(see, Matter of Krolick v Lowery,* 32 AD2d 317, 322, *affd* 26 NY2d 723).

However, a municipal corporation, as a political subdivision of the State, can only exercise this legislative authority to the extent that it has been delegated to the municipality by the State *(see, Albany Area Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372, 376; *Matter of Ames v Smoot,* 98 AD2d 216, 217). Accordingly, although the municipal home rule power is a broad one, it is not without its limitations *(see, Incorporated Vil. of Nyack v Daytop Vil.,* 78 NY2d 500, 505). In general: "The constitutional home rule provision confers broad police power upon local government relating to the welfare of its citizens * * * However, it places two firm restrictions on their use: (1) the local government * * * may not exercise its police power by adopting a local law inconsistent with constitutional or general law; and (2) the [municipality] may not exercise its police power when the Legislature has restricted such an exercise by preempting the area of regulation * * * The legislative intent to preempt need not be express. It is enough that the Legislature has impliedly evinced its desire to do so and that desire may be inferred from a declaration of State policy by the Legislature or from the legislative enactment of a comprehensive and detailed regulatory scheme in a particular area" *(New York State Club Assn. v City of New York,* 69 NY2d 211, 217, *affd* 487 US 1; *see also, Dougal v County of Suffolk,* 102 AD2d 531, 532-533, *affd* 65 NY2d 668).

"Inconsistency", within the context of defining the powers of local government vis-à-vis State government, is a term of art *(see, Matter of Ames v Smoot, supra,* at 218) and is not limited to those situations where there is an express conflict between State and local laws *(see, People v De Jesus,* 54 NY2d 465, 468). The concept of "inconsistency" is also applicable to those cases where a local law prohibits what would be permissible under State law or imposes such " 'prerequisite "additional restrictions" ' " on rights granted by State law as to inhibit

the exercise of those rights *(Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 108).

Similarly, as to the interrelated concept of "preemption", the State Legislature's intent to preempt local activity need not be expressed *(see, New York State Club Assn. v City of New York, supra; Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, 98). Rather, the intent to preempt "may be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area" *(Albany Area Bldrs. Assn. v Town of Guilderland, supra,* at 377; *Ba Mar v County of Rockland,* 164 AD2d 605, 612; *Oil Heat Inst. v Town of Babylon,* 156 AD2d 352, 353).

In the instant case, Penny Lane contends that the County's ordinance is preempted by the various provisions of the Penal Law dealing with obscenity. We agree.

As one court has noted, "There is considerable doubt about the authority of any municipality in this State to enact any legislation which would enter the field covered by New York State's Penal Law" *(People v Autieri,* 120 Misc 2d 725, 730 [harassment section of Penal Law preempted]). In the case of *Dougal v County of Suffolk (supra),* this Court found that a Suffolk County law banning the sale of certain drug paraphernalia had been preempted by State law. The Court's discussion in that case provides us with a guideline to analyzing the instant case:

"[W]e are compelled to conclude that the State Legislature 'has enacted a comprehensive and detailed regulatory scheme' in the field of 'drug-related paraphernalia' and, therefore, local legislation on the subject has been preempted * * *

"The Legislature has effected a total ban on the sale of 'drug-related paraphernalia' (General Business Law, §§ 850-853), prescribing criminal penalties for the possession or sale of certain denominated items (Penal Law, §§ 220.45, 220.50) and civil penalties for selling or offering to sell items explicitly defined as 'drug-related paraphernalia' (General Business Law, §§ 850-853). In addition, the Legislature has provided for the forfeiture of 'drug-related paraphernalia' (General Business Law, § 852, subd 2; Public Health Law, § 3387, subd 3), for retail license revocation of violators (General Business Law, § 852, subd 1), for the commencement of injunctive actions by local officials against such violators (General Business Law, § 853) and for the destruction of specified items

seized (Public Health Law, § 3381-a). The legislation includes each of the factors identified by the Court of Appeals as indicative of a preemptive intent (see *People v De Jesus*, 54 NY2d 465, 469, *supra).*

"Thus, there is no room for local ordinances to operate * * *

"At the time of the enactment of article 39 of the General Business Law * * * the State Legislature was well aware of the existence of local ordinances on the subject and, in declaring 'it is the policy of the state to prohibit the sale of drug paraphernalia' * * * evinced an intent to make that article the sole remedy * * * Having opted for a State-wide approach to combat the drug paraphernalia industry * * * we must conclude that the State objective of totally banning 'drug-related paraphernalia' carries with it a preemption against local legislation" *(Dougal v County of Suffolk, supra,* at 533-534).

Many of the criteria listed in *Dougal (supra)* are found in the State statutes concerning obscenity, and the differences can be accounted for by the State's decision to ban obscene material outright *(see generally,* Penal Law arts 235, 245). Although there are no civil penalties provided, as there are under the provisions with respect to drug paraphernalia, there is a total ban on obscene material *(see,* Penal Law §§ 235.05-235.07), as well as further ban on the dissemination to minors of material obscene as to them *(see,* Penal Law §§ 235.20-235.22). In addition, there are provisions under CPLR 6330 for the seizure and destruction of obscene material, as well as authorization for local officials to seek injunctive relief. Moreover, Penal Law article 245 establishes criminal penalties for the public display of offensive sexual material *(see,* Penal Law §§ 245.10, 245.11). Although the State obscenity laws lack civil penalties and license revocation sanctions, the lack of these remedies for violations, if anything, provides stronger support for a finding of preemption in obscenity cases. While only hypodermic needles and syringes (Penal Law § 220.45) and certain dilutants and packaging materials (Penal Law § 220.50) were believed by the Legislature to merit criminal sanctions under the State drug paraphernalia laws, the Penal Law bans all obscene material and subjects the promoter to criminal sanctions. If, indeed, a "State objective of totally banning 'drug-related paraphernalia' carries with it a preemption against local legislation" *(Dougal v County of Suffolk, supra,* 102 AD2d 531, 534), it would follow that the similar

State objective of totally banning obscene material would have the same preemptive effect.

As this Court pointed out in *Dougal (supra),* the Legislature was well aware of local ordinances regulating drug-related paraphernalia when it enacted General Business Law article 39, yet it still declared it to be State policy to ban the sale of such materials (L 1980, ch 811, § 1). Although no such declaration may be found in the general obscenity prohibitions *(see,* Penal Law § 235.00 *et seq.),* when amending Penal Law § 245.11 in 1985, the Legislature declared that: "[R]evision of the current law to protect minors against viewing pornography unwillingly from a public place by restricting access to such materials is in the best interests of the state" (L 1985, ch 231, § 1).

This clear expression of the State's interest in prohibiting the display of obscene materials should be compared with the final paragraphs of Penal Law §§ 245.01 and 245.02 (the "topless dancer" statutes) pertaining to the exposure of a person: "Nothing in this section shall prevent the adoption by a city, town or village of a local law prohibiting the exposure of a person substantially as herein defined in a public place".

Thus, while the State Legislature has expressly stated in the Penal Law that the local governments shall have the power to regulate the "exposure of a person" including the activity commonly referred to as "topless dancing" *(see, Brandon Shores v Incorporated Vil. of Greenwood Lake,* 68 Misc 2d 343), no such express grant of power to regulate obscene material or offensive sexual material appears in the statutes. This is further evidence of the State's intent to preempt the field.

Moreover, there is a State-wide component in obscenity regulation that does not arise with drug paraphernalia, since the community standard to be applied in obscenity prosecutions is a State-wide one and not a local one *(see, People v Calbud, Inc.,* 49 NY2d 389; *People v Heller,* 33 NY2d 314, *cert denied sub nom. Buckley v New York,* 418 US 944). The Court of Appeals has shown a firm commitment to this standard, holding that it: "is the most effective approach to closing the door on censorship 'by local authorities * * * who would [otherwise] be free to form their own notions as to what constitute[s] patently offensive material' " *(People v Calbud, Inc.,* 49 NY2d 389, 393, *supra,* quoting *People v Heller,* 33 NY2d 314, 322, *supra).*

Accordingly, in view of the nature of the subject matter that is being regulated, the purpose and scope of the State legislative scheme, and the need for a State-wide standard, it can only be concluded that the Penal Law has preempted this area of the law.

## III

The County points to Town Law § 130, which authorizes Town Boards to enact laws "suppressing vice, immorality * * * [and] prohibiting profane, vulgar or obscene language or conduct in any street or public place in the town" (Town Law § 130 [11]) to support its position that the local law is valid. However, the County's reliance upon Town Law § 130 (11) is misplaced. First, the section applies only to Town Boards, and there is no similar grant of authority in the County Law. Second, the argument is too broad, in any event. If the municipal power to regulate "vice [and] immorality" was left unchecked, then there would be no restriction on municipal regulation of prostitution or even robbery, arson, or murder *(see, People v Conte,* 64 Misc 2d 573 [section does not permit Town's regulation of topless dancing; specific authority later granted by legislation]). Further, it has been held that the authority to limit "profane, vulgar or obscene language" does not permit local laws regulating harassment, a field occupied by the Penal Law *(see, People v Autieri,* 120 Misc 2d 725, 730, *supra).* A similar conclusion must be reached with respect to the question of obscenity or offensive sexual material. The Town Law may not be utilized to encroach into an area completely occupied by the Penal Law. Any similarity in the aim and provisions between the local law in question and the Penal Law would not validate the local law. If the State has preempted the field, even duplications or consistent enactments are beyond a local government's powers *(see, Robin v Incorporated Vil. of Hempstead,* 30 NY2d 347).

The County also claims that the local law aims to protect minors. However, while the preamble does mention a concern with minors, nothing in the local law directly addresses specific standards of obscenity as to minors, and the restrictions in the law are not age-based. In any event, the Penal Law addresses obscenity as to minors as comprehensively as it does the general question of obscenity *(see,* Penal Law §§ 235.20-235.22).

Thus, the comprehensive nature of the State's regulation of

obscenity and the need for a State-wide standard are more convincing arguments in favor of preemption than those made against it by the County.

## IV

Furthermore, while no New York court has considered the preemption issue in obscenity regulation, the weight of foreign authority is in favor of limiting regulation to the State.

In *People v Llewellyn* (401 Mich 314, 257 NW2d 902, *cert denied sub nom. City of E. Detroit v Llewellyn,* 435 US 1008), the Michigan Supreme Court considered the question of whether local obscenity ordinances were preempted by the State-wide criminal laws. Under Michigan law, a municipal law is invalid: "if the state statutory scheme pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation" *(People v Llewellyn,* 401 Mich 314, 322, *supra,* 257 NW2d 902, 904, *supra).*

Michigan law provides that preemption may be found by express provision, legislative history, the pervasiveness of the regulatory scheme, or the need for uniformity as opposed to regulation adapted to local needs *(see, People v Llewellyn,* 401 Mich, *supra,* at 324, 257 NW2d, *supra,* at 905-906). Thus, the doctrine of preemption in Michigan is very similar to that in New York.

At issue in *Llewellyn* was an obscenity ordinance passed by the municipality of East Detroit. The Michigan Supreme Court found that Michigan's penal laws set out "a broad, detailed and multifaceted attack on the sale, distribution and exhibition of obscenity" *(People v Llewellyn,* 401 Mich, *supra,* at 326, 257 NW2d, *supra,* at 906). The State laws prohibited, with penalties, the sale, transportation, and exhibition of obscene material as well as the publication and distribution of materials portraying illicit sex or perversion. In addition, the laws prohibited the distribution of obscene material to minors *(People v Llewellyn,* 401 Mich, *supra,* at 327, 257 NW2d, *supra,* at 907). The court noted that "the definition and prohibition of obscenity offenses is clearly an area of the law which demands uniform, statewide treatment", and a "balkanized" set of standards and prohibitions, different in each locality, would both chill the right to free expression and burden the justice system with appeals, impeding prosecutions *(People v Llewel-*

*lyn,* 401 Mich, *supra,* at 327, 328, 257 NW2d, *supra,* at 907). For these reasons, the court held that East Detroit had no authority to regulate obscenity. In this regard, it may be noted that the New York scheme controlling obscenity is significantly more detailed than Michigan's, including, as it does, provisions for forfeiture, injunctive relief, and display prohibitions.

At least three other States have held that the State obscenity laws impliedly preempt local regulation: California *(see, Whitney v Municipal Ct.,* 58 Cal 2d 907, 27 Cal Rptr 16, 377 P2d 80; *Carl v City of Los Angeles,* 61 Cal App 3d 265, 269-271, 132 Cal Rptr 365, 367-369), Colorado *(see, Pierce v City of Denver,* 193 Colo 347, 565 P2d 1337 [State-wide standard applicable and obscenity a matter of State-wide concern]) and New Jersey *(see, State v Meyer,* 212 NJ Super 1, 512 A2d 1139, 1141 [display ordinance, as controlling sales, preempted by State sale law]; *Egg Harbor City v Colasuonno,* 182 NJ Super 110, 440 A2d 69, 71; *Wein v Town of Irvington,* 126 NJ Super 410, 315 A2d 35).

## V

The standards set out by this Court in *Dougal (supra),* the comprehensive nature of the Penal Law and CPLR provisions, the need for State-wide standards and uniformity of procedures, and the illustrative cases from outside New York all support a finding of preemption. It should be noted that a finding of preemption does not leave the County or Village without recourse since, if the material is genuinely obscene and the District Attorney's office declined to prosecute, local officials could bring an action under CPLR 6330 to prevent its sale *(see,* CPLR 6330 [1]), and the material could be seized and destroyed *(see,* CPLR 6330 [3]). In addition, if the material is found to be obscene under the standards in Penal Law § 235.21, the court may enjoin its sale or display to persons under 17 years of age (CPLR 6330 [6]). Furthermore, even if the offending material is not obscene, its display may be regulated by zoning ordinances that are reasonable and by content-neutral time, place, and manner restrictions *(see, Matter of Town of Islip v Caviglia,* 73 NY2d 544).

For all of the foregoing reasons, we find that the County was without authority to pass the instant ordinance, the field having been fully occupied by State regulation.

In view of our declaration that the County ordinance in

question is invalid because it is preempted by State law, we need not reach the parties' other contentions.

Accordingly, the proceeding pursuant to CPLR article 78 to review a determination of the respondent Suffolk County Department of Consumer Affairs dated March 21, 1990 is converted into a hybrid proceeding and action for a judgment declaring Local Laws, 1985, No. 2 of the County of Suffolk invalid on the ground of State preemption, it is declared that Local Laws, 1985, No. 2 of the County of Suffolk is invalid on the ground of State preemption, the determination dated March 21, 1990 is annulled, on the law, and the charges are dismissed.

SULLIVAN, J. P., O'BRIEN and COPERTINO, JJ., concur.

Ordered that the proceeding pursuant to CPLR article 78 to review a determination of the respondent Suffolk County Department of Consumer Affairs dated March 21, 1990 is converted into a hybrid proceeding and action for a judgment declaring Local Laws, 1985, No. 2 of the County of Suffolk invalid on the ground of State preemption; and it is further,

Adjudged that it is declared that Local Laws, 1985, No. 2 of the County of Suffolk is invalid on the ground of State preemption; and it is further,

Adjudged that the determination dated March 21, 1990 is annulled, on the law, and the charges are dismissed; and it is further,

Ordered that the petitioner is awarded one bill of costs.