OPINION OF THE COURT
Karen V. Murphy, J.
The CPLR article 78 petition is dismissed to the extent that it challenges Local Law 1534 (enacted as Local Law No. 1 [2007] of County of Suffolk, codified at Administrative Local Laws of County of Suffolk ch 383) on the ground of insufficient notice of public hearing. To the extent that the petition challenges Local Law 1534 on substantive grounds, the article 78 proceeding is converted to a declaratory judgment action and judgment is granted declaring the local law valid in all respects.
This is an article 78 proceeding seeking to annul Local Law 1534, which was enacted by the Suffolk County legislature to extend to residents of “planned retirement communities” protections similar to those enjoyed by mobile homeowners and multiple dwelling tenants. Petitioner also requests an order permanently enjoining the law’s enforcement. The local law was enacted on December 19, 2006 and approved by the County Executive on January 19, 2007.
Local Law 1534
Local Law 1534 defines the term “planned retirement community” as a contiguous parcel of privately owned real property on which 200 or more lots are leased to owners of year round *314 homes erected thereon and affixed thereto wherein the permanent occupation is restricted to tenants 55 years of age or older (Administrative Local Laws of County of Suffolk § 383-2). The law requires the owner or operator of a planned retirement community to offer every homeowner or tenant the opportunity to sign a 99-year ground lease and to grant the homeowner or tenant the option of cancelling the lease on 90 days’ written notice. Administrative Local Laws § 383-3, entitled “Leases,” provides that the community’s rules and regulations shall be attached to and become a part of the lease, and a copy of the lease must be provided to the homeowner or tenant when the first deposit toward the purchase price is made. The lease section further provides that a copy of the rules and regulations must be posted in a conspicuous public place on the grounds of the community. The section provides that the rules and regulations may not be modified without the written consent of three fourths of the homeowners. Section 383-4, entitled “Rules and Regulations,” provides that no regulation may be added or amended without the written consent of all of the homeowners or tenants then residing in the community. In determining whether the legislature was authorized to enact Local Law 1534, the court is not required to interpret its provisions. Accordingly, the court expresses no opinion as to whether unanimous consent of the homeowners is required to amend the rules and regulations of the retirement community.
The local law further provides that no homeowner or tenant may be charged a fee or assessment, except for rent and utilities, unless the fee or assessment has been approved by three fourths of the homeowners. All such charges for rent and utilities must be reasonably related to “the value of the facility available or the services actually rendered” (Administrative Local Laws § 383-5 [B]). The charges for rent and utilities must be fully disclosed at the time of the first deposit and may not be increased except as set forth in the lease.
The local law further provides that the owner or operator may not require the homeowner or tenant to purchase any goods or services, including fixtures or appliances, from any designated vendor. The owner or operator may not restrict the furnishing or improvement of the home, provided the furnishing or improvement is in compliance with applicable building codes and other legal provisions.
The local law provides that the owner or operator may not place any restrictions upon the homeowner’s right to sell his *315 home or assign the ground lease. The owner or operator may not charge any commission or fee with respect to the sale, unless it has acted as the owner’s agent pursuant to a written contract.
The local law provides that any owner or operator who violates its provisions shall be guilty of a misdemeanor punishable by a fíne not to exceed $500 and up to six months’ imprisonment. In addition, any homeowner or tenant who is injured as a result of the violation may bring an action for treble damages.
Local Law 1534 applies to “sales, actions, or leases involving planned retirement community homes occurring or entered into after” its effective date (Administrative Local Laws § 383-13). The law provides that it is to take effect on the 90th day following its filing with the Secretary of State, which occurred on February 5, 2007. The effective date has been stayed by order to show cause dated May 3, 2007 signed by the Honorable Daniel D. Angiolillo.
MHC Greenwood
Petitioner MHC Greenwood Village NY, L.L.C. is the owner and operator of Greenwood Village, a senior residential community located in Manorville, a community in Suffolk County. Greenwood is a Delaware limited liability company and is authorized to conduct business in New York. The community is comprised of approximately 525 single-family residences, as well as a clubhouse and recreational facilities. Pursuant to “residency agreements” between Greenwood and prospective purchasers, the purchaser agrees to erect and maintain a single-family dwelling on a specific lot within the community. The home must be occupied as a private dwelling by two persons who are 55 years of age or older and by no other persons. The term of the residency agreement is 99 years.
The resident’s “financial obligations” include a “base residency charge” of $740 per month. Each resident is responsible for the real estate taxes and utility charges applicable to his specific unit. There are also water and sewer charges that are payable to the community. Water is purchased from the Suffolk County Water Authority, and there is one meter for the entire community. The community owns and maintains its own sewage treatment facility. The residents are responsible for their percentage shares of capital improvements and “uninsured losses,” which are to be amortized over a five-year period. Residents are also charged a “reasonable flat rate” for snow removal and a “reasonable hourly rate” for lawn care.
*316 The base residency charge may be adjusted based upon the “resident’s percentage share” for increases in real estate taxes, property insurance, utilities, as well as “services required by government agencies” and “increased costs and expenses” of the community. Since each resident is responsible for his own real estate taxes, the adjustment is presumably based upon the tax increases pertaining to the common areas of the community. Services required by government agencies are defined broadly as including “permits, fire protection, and paramedic services” provided by governmental and “quasi-governmental agencies or private contractors.” The base residency charge is also subject to an inflationary adjustment based upon the consumer price index with a minimum annual increase of 4.5%. Finally, the residency charge is subject to “one-time adjustments,” which may take place every 10 years. A one-time adjustment may not exceed 50% of the aggregate increases in the consumer price index for the preceding nine years. The adjusted base residency charge may not exceed the “current market rate for rent” on vacant properties.
Residents are not permitted to assign their residency agreements or sublease the premises without the prior written consent of the community. If a resident sells his unit, the purchaser must meet the minimum age requirements and must be approved by Greenwood. Any dispute concerning interpretation or enforcement of the agreement is subject to arbitration. The arbitrator shall be provided by Judicial Arbitration and Mediation Services, Inc., unless the parties mutually agree upon another arbitration service.
Petitioner challenges Local Law 1534 on both procedural and substantive grounds. Greenwood asserts that the legislature and the County Executive did not give proper notice of their intentions to conduct public hearings on Local Law 1534. Greenwood asserts that Suffolk County lacked power to enact Local Law 1534 under Municipal Home Rule Law § 10, and that the subject matter of the local law has been preempted by the State. Greenwood objects to the retroactive application of the local law, claiming that it impairs the obligations of its residency agreements.
In seeking to uphold Local Law 1534, Suffolk County asserts that the law was enacted in accordance with statutory procedural requirements. The County further asserts that the local law is a valid exercise of the County’s legislative power. Although the County notes that private contractual arrangements *317 may “become the subject of regulatory legislation,” it does not specify the extent to which Local Law 1534 may be applied retroactively to Greenwood’s residency agreements. For the purpose of determining the validity of the local law, the court will assume that it applies to residency agreements in force on, or entered into after, the effective date, but not to charges that had already been assessed against Greenwood residents on that date. (See Landgraf v USI Film Products, 511 US 244, 269 [1994] [impairment of vested rights].)
CPLR Article 78 v Declaratory Judgment
Pursuant to CPLR article 78, a proceeding may be brought for a judgment that a body or officer proceeded in excess of its jurisdiction or that a determination was made in violation of lawful procedure (CPLR 7803 [2], [3]). As a general rule, an article 78 proceeding may not be brought to challenge the validity of a legislative act (Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 202 [1987]). Where plaintiff seeks a declaration as to the constitutionality of a legislative enactment, as distinct from the constitutionality of its application, the proper remedy is a declaratory judgment action (Board of Educ. of Belmont Cent. School Dist. v Gootnick, 49 NY2d 683, 687 [1980]). However, article 78 may be available when the challenge is directed not at the substance of an ordinance but at the procedures followed in its enactment (Matter of Save the Pine Bush v City of Albany, supra). Nonetheless, “courts are reluctant to question the internal procedures in the general lawmaking process” (Matter of Lewis v Klein, 45 NY2d 930, 932 [1978]).
As noted, Greenwood challenges Local Law 1534 on both procedural and substantive grounds. To the extent that Greenwood’s challenge is based upon inadequate notice of public hearing given by the legislature and the County Executive, Greenwood may seek to annul the local law in an article 78 proceeding (Matter of Krug v County of Lewis, 296 AD2d 834 [4th Dept 2002]). However, to the extent that Greenwood claims that Local Law 1534 is unconstitutional or that the legislature was unauthorized to enact it, the article 78 proceeding must be converted to a declaratory judgment action (Press v County of Monroe, 50 NY2d 695, 702 [1980]).
Equal Protection
Petitioner does not raise a substantive due process challenge to the local law nor does it claim that the local law is unconstitutional as applied to Greenwood (see generally Demore v Kim, *318 538 US 510 [2003]). Rather, Greenwood raises an equal protection challenge to Local Law 1534, claiming that the local law is discriminatory because Greenwood is the only “target” of the statute. An equal protection claim may be brought by a “class of one” where plaintiff alleges that it has intentionally been treated differently from others similarly situated and there is no rational basis for disparate treatment (Village of Willowbrook v Olech, 528 US 562, 564 [2000]). Additionally, a group or individual engaged in conduct protected by the First Amendment may challenge a law of general application if the law is actually targeted at the protected activity (Church of Lukumi Babalu Aye, Inc. v Hialeah, 508 US 520 [1993]). However, these general principles do not imply that a legislature commits discrimination by adopting an economic regulation, which at the time of enactment is being violated by only one specific member of an industry.
In any event, there is no evidence that Greenwood is the sole target of Local Law 1534. The “Legislative intent” section of the ordinance notes that Greenwood is “one example” of a retirement community where the developer retains ownership of the land on which the homes are located (Administrative Local Laws § 383-1). While Greenwood was clearly within the contemplation of the legislature, it has not alleged how it is being treated differently from other retirement communities. Thus, Greenwood has not sufficiently alleged an equal protection claim.
Legislative Authorization
The court will next consider whether the county legislature had the authority to enact Local Law 1534. Municipal Home Rule Law § 10 (1) (ii) provides,
“[E]very local government . . . shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law, relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such local law . . .
“(12) The government, protection, order, conduct, safety, health and well-being of persons or property therein. This provision shall include but not be limited to the power to adopt local laws providing *319 for the regulation or licensing of occupations or businesses . . .
This power to enact local legislation is secured to local governments by the State Constitution and is to be liberally construed (NY Const, art IX, § 2 [c] [10]; Matter of Penny Lane/E. Hampton v County of Suffolk, 191 AD2d 19, 23 [2d Dept 1993]).
Local Law 1534 is clearly intended to regulate the business of operating retirement communities. Furthermore, its provisions relate to the order and conduct of retirement community operators and the protection of retirees (see generally Maldini v Ambro, 36 NY2d 481 [1975]). Thus, Suffolk County had power to adopt Local Law 1534 unless the state legislature has restricted the local law’s adoption.
Preemption
Municipal Home Rule Law § 10 authorizes the localities to legislate in enumerated areas of local concern. However, the preemption doctrine represents a fundamental limitation on home rule power where the State has an overriding interest (Matter of Cohen v Board of Appeals of Vil. of Saddle Rock, 100 NY2d 395 [2003]). The state legislature may expressly state its intent to preempt local regulation. The intent to preempt local regulation may also be implied from the nature of the subject matter being regulated, as well as the scope and purpose of the statewide legislative scheme, including the need for statewide uniformity (id. at 400). A comprehensive and detailed statutory scheme may be evidence of the legislature’s intent to preempt. The court must examine whether the State has acted upon a subject and whether it has demonstrated a desire to preempt the possibility of discordant local regulation (id.). Examples of subjects where the Court of Appeals has found an implied intent to preempt local regulation based upon an overriding State interest or a need for uniformity are: the funding of highways (Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372 [1989]), the location of power plants (Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99 [1983]), abortion {Robin v Incorporated Vil. of Hempstead, 30 NY2d 347 [1972]), and the standard for review of variances from zoning requirements (Matter of Cohen v Board of Appeals of Vil. of Saddle Rock, supra). Because local ordinances carry a strong presumption of validity, the burden is on the challenger to show that the ordinance is preempted (Matter of Zorn v Howe, 276 AD2d 51, 56 [3d Dept 2000]).
*320 The state legislature has not expressed any intent to preempt local regulation of retirement communities. However, Greenwood argues that an intent to preempt local regulation of this subject may be inferred from state law governing the landlord-tenant relationship, as well as state law providing for rent stabilization.
Article 7 of the Real Property Law (§ 220 et seq.), entitled “Landlord and Tenant,” governs various aspects of the landlord-tenant relationship. The court notes that there are no provisions of article 7 dealing with retirement communities. Section 227-a of the article provides “senior citizens,” that is, tenants who are 62 years of age or older, with a right to terminate a residential lease if they are unable to live independently and are moving to the residence of a family member or are entering an adult care facility. Section 227-b provides senior citizens with the right to cancel a lease or contract to reside in an adult care facility or senior citizen housing facility within three business days after signing the lease or contract. These provisions apply to senior citizens who are no longer able to live independently, as opposed to active and independent adults 55 years of age or older, who choose to live in retirement communities.
Real Property Law § 233 is a detailed and comprehensive provision regulating the relationship between the owners and operators of “manufactured” or mobile home parks and the owners of mobile homes located in those communities. The statute was enacted in response to concerns that the operators of mobile home parks were engaging in various unfair practices including (1) the charging of sales commissions even though they had not helped to effectuate the sale, (2) eviction of tenants without justification or in reprisal, and (3) the imposition of unnecessary fees and arbitrary regulations and the nondisclosure of such fees and regulations (see Ba Mar v County of Rockland, 164 AD2d 605 [2d Dept 1991]). Section 233 includes various provisions designed to protect the mobile home owner from these abuses including (1) a requirement that operators offer a minimum of a one-year lease, (2) limitations on the grounds for eviction, (3) guidelines for modifying the park’s rules and regulations, (4) a requirement that all rents and fees be reasonable, (5) procedures for increasing rents and charges, (6) protection of the tenant’s right to install appliances, (7) restrictions on the operator’s ability to require the tenant to purchase equipment or services from the operator, (8) protection of the tenant’s right to sell his mobile home, and (9) prohibition of the *321 operator’s exacting a sales commission if it has not acted as an agent. Because of the comprehensive nature of the regulatory scheme covering mobile home parks, the Appellate Division held that the state legislature intended to preempt local regulation (Ba Mar v County of Rockland).
Greenwood argues that by addressing only mobile home parks, the legislature intended to preempt regulation of other “ground-lease dwelling communities.” However, because of the similarity between mobile homes and retirement communities, the court is not convinced that the legislature intended for retirement communities to remain unregulated. While mobile homes are “an attractive low-cost housing alternative for both the young and the elderly” (id. at 609), retirement communities by definition are a type of residence only for those of a certain age, i.e., 55 and older in this instance. Investment in a retirement community is more costly than mobile home ownership. However, retirement communities bear a resemblance to mobile home parks in that both types of communities combine aspects of home ownership and tenancy (id. at 608). While retirement community ground leases appear to be for a longer term than mobile home leases, “retirees” may nonetheless be subject to abuses similar to those suffered by mobile home owners. In modeling Local Law 1534 on Real Property Law § 233, the Suffolk County legislature clearly saw a parallel between the plight of retirees and mobile home owners. Indeed, since a tenant under a ground lease may be evicted even though the retirement home is permanently affixed to the property, the owner of a retirement home may be even more of a “captive audience” (Miller v Valley Forge Vil, 43 NY2d 626, 629 [1978]). Despite the potential for significant forfeiture, it appears that, if proper grounds exist, the tenant under a long-term ground lease may be evicted in summary proceedings (RPAPL 711; see also United States v Fairway Capital Corp., 433 F Supp 2d 226 [D RI 2006], affd 483 F3d 34 [1st Cir 2007] [Virgin Islands territorial law]). This court cannot divine from article 7 of the Real Property Law any intent on the part of the state legislature to preempt local regulation of retirement communities.
Alternatively, Greenwood argues that Local Law 1534 is preempted by the state rent stabilization laws. Emergency Tenant Protection Act of 1974 § 3 (McKinney’s Uncons Laws of NY § 8623 [L 1974, ch 576, sec 4, § 3, as amended]) declares- that the existence of a public emergency requires the regulation of residential rents for certain classes of housing accommodations. *322 Section 8624 provides for the creation of county rent guidelines boards, which may set maximum rates of rent adjustment, if a city having a population of less than one million or any town or village has determined the existence of such an emergency Since section 8623 (a) refers to “any plot or parcel of land which had been rented prior to [May 1, 1950] for the purpose of permitting the tenant thereof to construct or place his own dwelling thereon,” it appears that retirement communities created after that date are not covered by the statute. Greenwood argues that in enacting the Emergency Tenant Protection Act, the state legislature impliedly intended to preempt local rent regulation of other classes of housing accommodation. However, the Appellate Division has held that in enacting the Emergency Tenant Protection Act, the legislature did not preempt the entire field of rent regulation (Mott v Incorporated Vil. of Hempstead, 216 AD2d 545 [2d Dept 1995]). Moreover, Local Law 1534’s requirement that charges for rent and utilities be reasonably related to value is not inconsistent with the state regulatory scheme. The court concludes that Local Law 1534 is not preempted by state rent stabilization laws.
In failing to enact legislation regulating retirement communities, the state legislature may have determined to await experience with regulation at the local level before adopting comprehensive regulation on a statewide basis. Similar .to the relation between the state and federal governments, the localities, in exercising the authority granted to them by the state, may serve as “laboratories for social and economic experiment” (Garcia v San Antonio Metropolitan Transit Authority, 469 US 528, 546 [1985]). In any event, the court concludes that the state legislature did not preempt county legislatures from enacting retirement community legislation similar to Local Law 1534.
Finally, Greenwood argues that Local Law 1534 is preempted by the federal Housing for Older Persons Act of 1995 (42 USC § 3607 [b] [2] [C] [HOPA]). However, HOPA is a civil rights statute designed to create a senior housing exception to the general prohibition of age discrimination. HOPA is not intended to displace nondiscriminatory state or local regulation of housing accommodations (see Taylor v Rancho Santa Barbara, 206 F3d 932 [9th Cir 2000]).
Notice
The court will next consider whether proper notice of the public hearings was given by the legislature and the County Executive. Municipal Home Rule Law 20 (5) provides that if a *323 county does not have an elective chief executive officer, no local law shall be passed by the legislature until a public hearing on the law has been held. The statute requires that the public hearing be held on at least three days’ notice (Municipal Home Rule Law § 20 [5]).
Section 20 does not impose similar legislative public hearing or notice requirements on the legislatures of counties that have elective chief executive officers. However, the Suffolk County Charter and Administrative Code provide that if the entire legislature is to hold a public hearing, notice shall be given by posting on the clerk’s bulletin board and publication in the official county papers (Administrative Code of County of Suffolk § A2-8 [B]). The notice shall state the time and place of the hearing and shall be given not less than three or more than 15 days before the date of the hearing (id.). The bulletin board notice must include a copy of the proposed law, and the published notice must include a synopsis (id.). Posting and publication are methods reasonably calculated to reach the “press, opponents of particular legislation, . . . legislature-watchers” or others who might be interested in the proposed law (Matter of Lewis v Klein at 932). There is no requirement that notice be given to the “targets” or “target” of the legislation.
Section 20 of the Municipal Home Rule Law provides that in counties with elective chief executive officers, no local law shall be approved by the elected chief executive until a public hearing has been held before him. The public hearing before the chief executive shall also be held on at least three days’ notice. Consistent with section 20, the Suffolk County Charter provides that the County Executive shall advertise the holding of a public hearing on the local law in the next available editions of the official county newspapers published after the presentation of the law to the executive (Charter § C2-14 [B]). The hearing shall be held no less than four and no more than seven days after the last publication date, inclusive of Sundays and holidays (id.).
Technical compliance with notice provisions is not essential to the validity of a municipal enactment provided the notice given complies with the substance of the provision (41 Kew Gardens Rd. Assoc. v Tyburski, 124 AD2d 553, 554 [2d Dept 1986]). Indeed, even with respect to the more fundamental process of submitting propositions to the general electorate, substantial compliance will be acceptable provided that “there has been in fact some posting and publication to satisfy the statute” (Matter of D'Addario v McNab, 32 NY2d 84, 87 [1973]).
*324 Notice of a public hearing to be conducted by the legislature on October 17, 2006 was posted on the bulletin board of the clerk of the legislature together with a copy of the proposal. The court notes that the affidavit of Richard Baker, the deputy clerk of the legislature, states that the notice was posted on the bulletin board not less than three nor more than 15 days before the date of the meeting but does not give the exact date of the posting. However, the conclusory nature of the affidavit of posting is not fatal to Local Law 1534’s enactment. Even very short notice on the clerk’s bulletin board may allow interested parties to present opposition to a measure (Matter of Lewis v Klein, supra). If a posting is untimely, it may still be in substantial compliance with the notice requirement. Where the notice has in fact been posted on the bulletin board, a court should be reluctant to question the exact time of the posting.
While the court does not wish to encourage affidavits of this nature, the court is constrained to hold that Mr. Baker’s affidavit of posting is sufficient.
Additionally, notice of the public hearing to be conducted by the legislature was published in the official county newspapers, the Smithtown News and the Smithtown Messenger, on October 6, 2006. Both published notices stated that the local law “would enact protections for those who reside in planned retirement communities within the County of Suffolk.” While the synopsis of the local law provided in the published notices was terse, it complied with the substance and purpose of the notice provision. Thus, the court concludes that the notice of the public hearing to be conducted by the legislature was proper.
Notice of a public hearing to be conducted by the County Executive on January 9, 2007 was published in the Smithtown News on January 4, 2007. The notice stated that an introductory resolution had been passed by the Suffolk County legislature and had been presented to the County Executive for approval. Although a synopsis of the local law is apparently not required by the County Charter for published notice of hearings to be conducted by the County Executive, the notice did include a synopsis. Although a copy of the notice was also forwarded to the Smithtown Messenger, the notice was not published by the second newspaper. Nonetheless, the public hearing was held by the County Executive on January 9, 2007. Because there was *325 actual publication, the court concludes that there was substantial compliance with the notice provision and the notice given by the County Executive was proper.
Accordingly, the article 78 petition is dismissed to the extent that it challenges Local Law 1534 on the ground of insufficient notice of public hearing. Petitioner’s request for injunctive relief is denied. The parties may settle a judgment on notice dismissing the article 78 proceeding and declaring Local Law 1534 valid in all respects.